[No. D058348. Fourth Dist., Div. One. Aug. 29, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
RAFAEL ORTIZ et al., Defendants and Appellants.

## Counsel

Patricia J. Ulibarri, under appointment by the Court of Appeal, for Defendant and Appellant Rafael Ortiz.

Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant Raymundo Quezada.

Carl Fabian, under appointment by the Court of Appeal, for Defendant and Appellant Gustavo Martinez, Jr.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons and Julie L. Garland, Assistant Attorneys General, and Heidi T. Salerno, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

**McDONALD, J.**—Defendants Rafael Ortiz, Raymundo Quezada, and Gustavo Martinez, Jr. (together Defendants), appeal judgments following their jury convictions of two counts of kidnapping during a carjacking (counts 1 and 2; Pen. Code, § 209.5, subd. (a))[1] and one count of evading a police officer with reckless driving (count 3; Veh. Code, § 2800.2, subd. (a)). The jury also found Quezada guilty of possession of a firearm by a felon (count 4; former § 12021, subd. (a)(1) [now § 29800, subd. (a)(1) (Stats. 2010, ch. 711, § 6)]) and carrying a firearm in a vehicle (count 5; former § 12025, subd. (a)(3) [now § 25400, subd. (a)(3) (Stats. 2010, ch. 711, § 6)]). We refer to these two provisions by their former designations. The jury also found true allegations that Martinez personally used a firearm in committing counts 1 and 2 (§ 12022.53, subd. (b)) and that Ortiz and Quezada, although not personally armed, were vicariously liable for possession of a firearm while committing counts 1 and 2 (§ 12022, subd. (a)(1)).

On appeal, Defendants contend (1) the evidence is insufficient to support their convictions of kidnapping during a carjacking (counts 1 and 2); (2) the trial court erred by not instructing on the lesser included offense (LIO) of simple kidnapping; (3) the trial court erred by instructing with CALCRIM No. 1204 on counts 1 and 2; (4) the trial court abused its discretion in sentencing Ortiz by imposing a consecutive, upper term for count 3; (5) Quezada's convictions on counts 4 and 5 and his firearm enhancements for counts 1 and 2 must be reversed because the court did not give a unanimity

---

[1] All statutory references are to the Penal Code unless otherwise specified.

instruction regarding the possible multiple acts of his firearm possession; (6) Quezada's punishment for counts 4 and 5 must be stayed pursuant to section 654 because those counts involved the same indivisible course of conduct as the firearm enhancements to counts 1 and 2; and (7) we should independently examine the record of the trial court's sealed, in camera hearings for any error.

## FACTUAL AND PROCEDURAL BACKGROUND

About 10:30 a.m. or 10:45 a.m. on February 2, 2009, Joshua Castrillon and his girlfriend, Silvia Arellano, left their Chula Vista home and drove her 2007 dark gray 530i BMW to Pacific Beach to have breakfast at Rocky's restaurant. Castrillon drove the BMW while Arellano sat in the front passenger seat. As soon as they parked on Ingraham Street in front of the restaurant, a Lincoln Navigator pulled up in front of them and three men (Ortiz, Martinez, and Quezada) got out and approached the BMW. The men were wearing dark clothes, gloves, and sweatshirts with hoods pulled over their heads. Martinez, holding a gun, pushed Castrillon, who had just opened the driver's door to get out, back into the car and over the center console into the backseat. Castrillon sat directly behind the driver's seat. Martinez then sat in the driver's seat. At the same time, Ortiz stopped Arellano from opening the front passenger door further, ordered her to get back in, and shut her door. Quezada entered the car from the right rear passenger door and sat in the middle backseat. Ortiz then got in the backseat and sat to the right of Quezada, directly behind Arellano. Martinez drove the BMW south on Ingraham Street. He told Arellano to do whatever he said and everything would be fine. When Ortiz asked Arellano for her cell phone, she accidentally handed him her iPod and then saw it fly out the window. When she reached back into her purse to find her cell phone, Ortiz placed a Taser to her back and said, "Make sure she's not dialing." She handed Ortiz her purse and then felt a Taser sting her back.

Paul Fatta, an owner of the Big Kahuna's restaurant adjacent to Rocky's, witnessed the incident and called 911. He described the three men as Hispanic and wearing loose-fitting jeans and hooded sweatshirts. San Diego Police Officer Howard Spetter responded to the dispatch regarding a carjacking of the BMW and soon located and began following it. The BMW turned onto the eastbound I-8 Freeway. Martinez saw the police car following him and told Arellano to "be cool" and "not . . . do anything stupid" if he got pulled over. Quezada spoke to someone on his cell phone and then he or Ortiz told Martinez to "[j]ust try not to get stopped by the police."

Meanwhile, San Diego Police Officer Elias Rodriguez, a tactical flight officer, was flying in the airborne law enforcement (ABLE) helicopter and

responded to the dispatch regarding the carjacked BMW. He saw a vehicle matching the BMW's description on the I-8 Freeway at its interchange with the I-5 Freeway; Spetter's patrol car was following it. Martinez began changing lanes and driving slower than the speed limit. He then made an abrupt lane change, cutting across two lanes, and drove onto Hotel Circle. Spetter then turned on his lights and siren and pursued the BMW. Martinez went through a stop sign, and accelerated to 90 miles per hour in a 35-mile-per-hour zone. He weaved in and out of traffic, crossed into the oncoming lane of traffic, and nearly collided with other vehicles. Martinez yelled, "Get ready." He threw his gun out the front passenger window. He went through another stop sign and then entered back onto eastbound I-8. San Diego Police Officer Lisa Hartman joined Spetter in his pursuit of the BMW.

Martinez cut across all the traffic lanes, pulled over, and stopped on the left shoulder of the freeway's center divide. Martinez, Ortiz, and Quezada jumped out of the car and began running. They jumped over the center divider wall and ran across the westbound lanes of freeway traffic. They then climbed over a fence and ran toward the adjacent Motel 6. As they ran through its parking lot, they removed articles of clothing. They ran through the Motel 6 and out its back door near the San Diego River. San Diego Police Sergeant Charles Lara drove into the Motel 6's parking lot and saw people pointing north. He got out of his car with his pistol drawn, heard rustling noises in the bushes, and saw three men walking north in the waist-deep water of the San Diego River. He yelled, "Show me your hands [or] I will shoot you." They complied with his order that they return to the riverbank. Martinez was wearing a black shirt, Ortiz a white shirt, and Quezada a black hooded sweatshirt. Officers found baseball caps, a jacket, and five gloves that Defendants had discarded on or near the Motel 6 property. A $100 bill was found in the jacket's pocket. In the "Hotel Circle" area along the pursuit route, police found a loaded nine-millimeter Glock pistol, an unloaded Beretta pistol, a magazine, and bullets.

Meanwhile, Spetter and Hartman found Castrillon and Arellano in the BMW and ordered Castrillon to get out. Castrillon appeared terrified and Arellano was shaking, crying, and curled up in the fetal position. Castrillon told Spetter he was the victim of a carjacking. Arellano confirmed they were victims and not suspects. Hartman found a Taser and a pair of black gloves inside Arellano's purse, which Arellano denied were hers. A $100 bill was missing from her purse. Arellano was taken to the Motel 6's parking lot, where she identified Martinez as the man who threw the gun out and Quezada as the man with the Taser.[2] A police videotape showed Defendants leaving

---

[2] However, at the preliminary hearing, Arellano identified Ortiz as the man who sat directly behind her and used the Taser on her. She identified Quezada as the man who sat in the middle backseat.

the BMW on the freeway. Ortiz, wearing a white shirt, got out of the BMW's right rear door first, showing he was sitting directly behind Arellano.

On February 5, 2009, Castrillon told investigators he believed the kidnapping was the result of his not paying for a large amount of marijuana coming from Tijuana, Mexico. In 2008, Castrillon became acquainted with Arturo Galarza, who introduced him to Daniel Jasso, an affiliate of Teodoro Garcia Simental, a former lieutenant of a Mexican drug cartel. Castrillon agreed to organize the smuggling of 100 kilos of marijuana, worth $70,000 to $100,000, from Tijuana to the United States. However, when the marijuana never arrived, Castrillon was responsible for its $70,000 to $100,000 value. He was afraid of Simental, Galarza, and Jasso.

Castrillon lived with Arellano, a United States citizen with a Mexican law degree, who worked for her father's business in Mexico. She believed Castrillon owned a restaurant and lunch truck, and was unaware he was involved in criminal activity. She never saw him with much money.

On February 9, 2009, police had Castrillon make pretext calls to Jasso and Galarza. Jasso denied that he and Galarza were involved in the kidnapping. Jasso told Castrillon that he needed to pay back his debt to him. Galarza also denied he was involved in the kidnapping and denied knowing who did it. Galarza told Castrillon that he needed to pay his debt.

Galarza was arrested for the kidnapping and carjacking of Castrillon and Arellano. His white Lincoln Navigator was impounded and his home was searched. One firearm was found in his home, and one pound of cocaine and two pounds of marijuana were found in his garage. Galarza admitted he knew Castrillon and that he (Castrillon) had been involved with Jasso in drug trafficking from Mexico to the United States. He also stated he knew Castrillon took the drugs and was responsible for their $100,000 value.

Jasso was also arrested for the kidnapping and carjacking of Castrillon and Arellano. Three firearms and five pounds of marijuana were found during a search of his home.

An information was filed charging Martinez, Ortiz and Quezada with two counts of kidnapping during a carjacking (counts 1 and 2; § 209.5, subd. (a)) and one count of evading a police officer with reckless driving (count 3; Veh. Code, § 2800.2, subd. (a)). Quezada was also charged with possession of a firearm by a felon (count 4, former § 12021, subd. (a)(1)) and carrying a concealed firearm in a vehicle (count 5, former § 12025, subd. (a)(3)). The information alleged that in committing counts 1 and 2 Martinez and Quezada personally used a firearm (§ 12022.53, subd. (b)), and Ortiz was vicariously liable for personal use of a firearm (§ 12022, subd. (a)(1)).

Following trial, the jury found Defendants guilty of all charges. The jury also found true allegations that Martinez personally used a firearm in committing counts 1 and 2 (§ 12022.53, subd. (b)) and Ortiz and Quezada were vicariously liable for use of a firearm in committing counts 1 and 2 (§ 12022, subd. (a)(1)). The trial court found Martinez had two prior felony convictions and sentenced him to life in prison for count 1 with a 10-year enhancement for the firearm allegation, life in prison for count 2 with a 10-year enhancement for the firearm allegation, which term was stayed, and a three-year term for count 3, which term was also stayed. The court sentenced Ortiz to life in prison for count 1 with a one-year enhancement for the firearm allegation, life in prison for count 2 with a one-year enhancement for the firearm allegation, which term was stayed, and a consecutive three-year term for count 3. The court sentenced Quezada to life in prison for count 1 with a one-year enhancement for the firearm allegation, life in prison for count 2 with a one-year enhancement for the firearm allegation, which term was stayed, a consecutive three-year term for count 3, and concurrent three-year terms for counts 4 and 5. They each filed a notice of appeal.

## DISCUSSION

### I

### *Substantial Evidence to Support Convictions of Counts 1 and 2*

Defendants contend there is insufficient evidence to support their convictions of counts 1 and 2. They argue there was no evidence showing they kidnapped Castrillon and Arellano to facilitate the carjacking.

### A

When an appellant challenges a criminal conviction based on a claim of insufficiency of the evidence, "the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11 [82 Cal.Rptr.2d 413, 971 P.2d 618], citing *People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738].) "Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." (*People v. Young* (2005) 34 Cal.4th 1149, 1181 [24 Cal.Rptr.3d 112, 105 P.3d 487].)

The substantial evidence standard of review involves two steps. "First, one must resolve all explicit conflicts in the evidence in favor of the respondent and presume in favor of the judgment all *reasonable* inferences. [Citation.] Second, one must determine whether the evidence thus marshaled is substantial. While it is commonly stated that our 'power' begins and ends with a determination that there is substantial evidence [citation], this does not mean we must blindly seize any evidence in support of the respondent in order to affirm the judgment. . . . [Citation.] '[I]f the word "substantial" [is to mean] anything at all, it clearly implies that such evidence must be of ponderable legal significance. Obviously the word cannot be deemed synonymous with "any" evidence. It must be reasonable . . . , credible, and of solid value . . . .' [Citation.] The ultimate determination is whether a *reasonable* trier of fact could have found for the respondent based on the *whole* record." (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1632–1633 [29 Cal.Rptr.2d 191], fns. omitted.) "[T]he power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted, which will support the determination, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. *If such substantial evidence be found, it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion.*" (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873–874 [197 Cal.Rptr. 925] (*Bowers*).)

## B

Section 209.5 defines the offense of kidnapping during a carjacking:

"(a) Any person, who, during the commission of a carjacking and *in order to facilitate the commission of the carjacking, kidnaps another person* who is not a principal in the commission of the carjacking shall be punished by imprisonment in the state prison for life with the possibility of parole.

"(b) This section shall only apply if the movement of the victim is beyond that merely incidental to the commission of the carjacking, the victim is moved a substantial distance from the vicinity of the carjacking, and the movement of the victim increases the risk of harm to the victim over and above that necessarily present in the crime of carjacking itself." (Italics added.)

The trial court instructed on counts 1 and 2 (kidnapping during a carjacking) with CALCRIM No. 1204 as follows:

"The defendants are charged in Counts 1 and 2 with kidnapping during a carjacking. To prove the defendant is guilty of this crime, the People must prove that:

"[One,] [t]he defendant committed a carjacking;

"Two, during the carjacking, the defendant took, held, [or] detained another person by using force or by instilling reasonable fear;

"Three, the defendant moved the other person or made that person move a substantial distance from the vicinity of the carjacking;

"Four, the defendant *moved or caused the other person to move with the intent to facilitate the carjacking* or to help himself escape or to prevent the other person from sounding an alarm;

"Five, the person moved was not one of the carjackers;

"[S]ix, the other person did not consent to the movement;

"And, . . . seven, the defendant did not actually and reasonably believe the other person consented to the moving. [¶] . . . [¶]

"To decide whether the defendant committed carjacking, please refer to separate instructions I will now give you on that crime.

"As used here, substantial distance means more than slight or trivial distance. The movement must have been more than merely brief and incidental to the commission of the carjacking. The movement must have substantially increased the risk of physical or psychological harm to the person beyond that necessarily present in carjacking.

"In deciding whether the movement was sufficient, consider all the circumstances related to the movement. . . ." (Italics added.)

The court also instructed on the offense of carjacking with CALCRIM No. 1650 as follows:

"To prove a carjacking, the People must prove that:

"One, the defendant took a motor vehicle that was not his own;

"Two, the vehicle was taken from the immediate presence of the person who possessed the vehicle or was its passenger;

"Three, the vehicle was taken against the person's will;

"Four, the [defendant] used force or fear to take the vehicle or to prevent that person from resisting;

"And five, when the defendant used force or fear to take the vehicle, he intended to deprive the other person of possession of the vehicle either temporarily or permanently.

■ "The defendant's intent to take the vehicle must have been formed before or during the time he used force or fear. If the defendant did not form this required intent until after using the force or fear, then he did not commit carjacking. A person takes something when he or she gains possession of it and moves it some distance. The distance moved may be short. . . ."

The intent that the kidnapping facilitate the carjacking must be present when the original asportation began. (Cf. *People v. Laursen* (1972) 8 Cal.3d 192, 198 [104 Cal.Rptr. 425, 501 P.2d 1145] ["the rule that a [kidnapping] in which a robbery occurs does not constitute [kidnapping] for the purpose of robbery [under § 209] unless the specific intention to rob is present at the time of the original asportation"].) "Intent is rarely susceptible of direct proof and usually must be inferred from the facts and circumstances surrounding the offense." (*People v. Pre* (2004) 117 Cal.App.4th 413, 420 [11 Cal.Rptr.3d 739]; see *People v. Beeman* (1984) 35 Cal.3d 547, 558–559 [199 Cal.Rptr. 60, 674 P.2d 1318].)

## C

■ We conclude there is substantial evidence to support Defendants' convictions or counts 1 and 2. The jury could reasonably infer from all the evidence that Defendants kidnapped Castrillon and Arellano to facilitate the carjacking. (§ 209.5; CALCRIM No. 1204.) Undisputed evidence showed that Defendants quickly jumped out of the Lincoln Navigator, pushed Castrillon and Arellano back into the BMW, and drove the BMW away with Castrillon and Arellano held captive inside.

■ Defendants do not dispute there is substantial evidence to support findings that they committed both the kidnapping and carjacking offenses, but argue there is insufficient evidence to support a finding they kidnapped Castrillon and Arellano to facilitate the carjacking. However, we conclude the jury could reasonably infer from the circumstances that Defendants kidnapped Castrillon and Arellano for the dual purposes of taking the victims (Castrillon and Arellano) *and* taking the BMW. Because Castrillon owed a large drug debt (i.e., $70,000 to $100,000) to Jasso and Galarza, the jury could reasonably infer Defendants took the 2007 530i BMW with the intent

to hold or sell it as partial payment of that drug debt. Although, as Defendants argue, there was no evidence presented by the People regarding the current market value of the BMW, the jurors could rely on their common knowledge that late-model BMW's have a substantial market value. Contrary to Defendants' argument, that inference by the jurors was not mere speculation, but was instead reasonably based on common knowledge regarding the value of late-model BMW's. Furthermore, assuming arguendo one of the purposes, if not the primary purpose, of the kidnappings was to kidnap and hold Castrillon and Arellano (e.g., for ransom that would be credited toward Castrillon's drug debt), that does not disprove that another purpose of the kidnappings was to facilitate the carjacking. Defendants do not cite any cases holding, nor are we persuaded, that the sole, or primary, intent of a section 209.5 offense must be to facilitate a carjacking. Rather, based on the plain language of section 209.5, we believe that offense requires there be *an* intent that the kidnapping facilitate a carjacking, even if there are other concurrent intents for the kidnapping. To the extent Defendants cite evidence or inferences that would have supported a contrary finding regarding their intent in committing the kidnappings (e.g., that their sole criminal purpose was to kidnap Castrillon and Arellano to pay the drug debt, the carjacking was merely incidental to the kidnapping, or vice versa), they misconstrue and/or misapply the substantial evidence standard of review.[3] (*People v. Rodriguez, supra,* 20 Cal.4th at p. 11; *People v. Johnson, supra,* 26 Cal.3d at p. 578; *People v. Young, supra,* 34 Cal.4th at p. 1181; *Kuhn v. Department of General Services, supra,* 22 Cal.App.4th at pp. 1632–1633; *Bowers, supra,* 150 Cal.App.3d at pp. 873–874.)

## II

### Jury Instruction on LIO of Simple Kidnapping

Defendants contend the trial court erred by not instructing on simple kidnapping as an LIO of kidnapping during a carjacking.

### A

As discussed above, the trial court instructed with CALCRIM No. 1204 on the section 209.5 offense of kidnapping during a carjacking as charged in counts 1 and 2. It also instructed on the LIO's of carjacking and felony false

---

[3] The fact the prosecutor argued in closing that the evidence showed Defendants intended to kidnap Castrillon and Arellano to pay for his drug debt did not preclude the jury from reasonably inferring one of Defendants' intents for the kidnappings was to facilitate the carjacking.

imprisonment.[4] The court refused Defendants' request for an instruction on simple kidnapping as an LIO of kidnapping during a carjacking. The jury found Defendants guilty of both counts of kidnapping during a carjacking (counts 1 and 2).

## B

▮ "The trial court has a sua sponte duty to instruct on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present and there is evidence that would justify a conviction of such a lesser offense." (*People v. Cooper* (1991) 53 Cal.3d 771, 827 [281 Cal.Rptr. 90, 809 P.2d 865].) An instruction on an LIO is not required when there is no evidence to support a finding that the LIO was committed. (*People v. Breverman* (1998) 19 Cal.4th 142, 154 [77 Cal.Rptr.2d 870, 960 P.2d 1094] (*Breverman*).) Alternatively stated, "a trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence. On the other hand, the court is not obliged to instruct on theories that have no such evidentiary support." (*Id.* at p. 162.) "[A] trial court is not required to instruct the jury as to all lesser included offenses, only those that 'find substantial support in the evidence.' " (*People v. Medina* (2007) 41 Cal.4th 685, 700 [61 Cal.Rptr.3d 677, 161 P.3d 187] (*Medina*).) In determining whether a trial court erred in not giving a simple kidnapping LIO instruction, we consider whether there was substantial evidence to support a verdict on that LIO. (*Ibid.*; *Breverman*, at p. 162.) "It is error . . . to instruct on a lesser included offense when a defendant, if guilty at all, could only be guilty of the greater offense, i.e., when the evidence, even construed most favorably to the defendant, would not support a finding of guilt of the lesser included offense but would support a finding of guilt of the offense charged." (*People v. Stewart* (2000) 77 Cal.App.4th 785, 795–796 [91 Cal.Rptr.2d 888] (*Stewart*).)

"Under California law, a lesser offense is necessarily included in a greater offense if . . . the statutory elements of the greater offense . . . include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser." (*People v. Birks* (1998) 19 Cal.4th 108, 117 [77 Cal.Rptr.2d 848, 960 P.2d 1073].)

In a noncapital case, the *Watson* standard of prejudice applies when considering a trial court's error in failing to instruct on an LIO supported by

---

[4] The trial court instructed on felony false imprisonment with CALCRIM No. 1240 as follows: "False imprisonment by violence or menace is a lesser included offense of kidnapping during the commission of a carjacking. To prove the defendant is guilty of this crime, the People must prove that: [¶] The defendant intentionally and unlawfully confined or detained someone or caused that person to be restrained or confined or detained by violence or menace; and the defendant made the other person stay or go somewhere against that person's will. . . ."

substantial evidence. (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; *Breverman, supra,* 19 Cal.4th at p. 178.) We reverse only if, after examining the entire record, we conclude it is reasonably probable the defendant would have obtained a more favorable outcome had the error not occurred. (*Watson,* at p. 836; *Stewart, supra,* 77 Cal.App.4th at p. 796.)

C

■ We conclude the trial court did not err by not instructing on simple kidnapping as an LIO of kidnapping during a carjacking. "Generally, to prove the crime of [simple] kidnapping, the prosecution must prove three elements: (1) a person was unlawfully moved by the use of physical force or fear; (2) the movement was without the person's consent; and (3) the movement of the person was for a substantial distance. (§ 207, subd. (a).)" (*People v. Jones* (2003) 108 Cal.App.4th 455, 462 [133 Cal.Rptr.2d 358], fn. omitted.) Those elements appear to be included within the elements of kidnapping during a carjacking. (§ 209.5; CALCRIM No. 1204.) Assuming arguendo simple kidnapping meets the elements test and is therefore an LIO of kidnapping during a carjacking, we nevertheless conclude the trial court did not err by failing to instruct on simple kidnapping because there is insufficient evidence in the record to support a verdict finding Defendants guilty of simple kidnapping rather than kidnapping during a carjacking. (*Medina, supra,* 41 Cal.4th at p. 700; *Breverman, supra,* 19 Cal.4th at p. 162; *Stewart, supra,* 77 Cal.App.4th at pp. 795–796.)

The undisputed evidence shows that as Castrillon and Arellano were beginning to step out of the BMW, Defendants quickly jumped out of the Lincoln Navigator, pushed Castrillon and Arellano back into the BMW, and drove away with them inside. There can be no doubt the kidnappings occurred *during* a carjacking. The kidnappings did not occur before the carjacking, but rather were simultaneous with and during the carjacking. Furthermore, there was an absence of substantial evidence to support a reasonable inference that the kidnappings were not done to facilitate the carjacking. Rather, as discussed above, there is substantial, if not overwhelming, evidence to support a reasonable inference that Defendants kidnapped Castrillon and Arellano to facilitate the carjacking.

Contrary to Defendants' assertion, it cannot be reasonably inferred from the evidence that Defendants' *sole* purpose in kidnapping Castrillon and Arellano was to hold them for ransom to pay the drug debt and that facilitation of the carjacking was not one of their purposes. Defendants took both the victims and their car at the same time. Therefore, it could only be reasonably inferred that if Defendants were guilty of any offense involving the carjacking, it was kidnapping during a carjacking and not simple kidnapping (i.e., without a purpose of facilitating the carjacking). (Cf. *Medina, supra,*

41 Cal.4th at p. 700 ["In this case, there was no substantial evidence that the offense committed was less than that charged. As the Court of Appeal majority concluded: 'If the jury found that [defendant] intended to kidnap the Perez family, it must have also found that he intended to carjack, as he was running from the police and jumped into the van and attempted to start it, knowing the Perez family was inside. . . . There was no evidence he intended only one of those offenses [(i.e., carjacking or kidnapping)] and not the other, or, under the facts, he would have committed only one.' "].) Because there is insufficient evidence to support a verdict finding Defendants guilty of only simple kidnapping, the trial court did not err by not instructing on simple kidnapping as an LIO of kidnapping during a carjacking.

### D

Assuming arguendo the trial court erred by failing to instruct on simple kidnapping as an LIO of kidnapping during a carjacking, we nevertheless would conclude that error was harmless under the *Watson* standard of prejudice. (*Breverman, supra*, 19 Cal.4th at p. 178; *People v. Watson, supra*, 46 Cal.2d at p. 836; *Stewart, supra*, 77 Cal.App.4th at p. 796.) Based on our review of the entire record, it appears highly unlikely the jury would have convicted Defendants of simple kidnapping instead of the greater offense of kidnapping during a carjacking. The jury was instructed on, and rejected, the LIO's of carjacking and false imprisonment and instead convicted Defendants of the greater offense of kidnapping during a carjacking. Because the jury rejected those LIO's, we believe it is highly unlikely, given the egregious factual circumstances in this case, the jury would have found Defendants guilty of simple kidnapping rather than the greater offense of kidnapping during a carjacking. It is not reasonably probable Defendants would have obtained a more favorable outcome had the trial court instructed on simple kidnapping as an LIO of kidnapping during a carjacking. Therefore, any error in failing to instruct on simple kidnapping was not prejudicial. (*Breverman*, at p. 178; *Watson*, at p. 836; *Stewart*, at p. 796.)

### III

#### CALCRIM No. 1204

Defendants contend the trial court erred by instructing with CALCRIM No. 1204 on counts 1 and 2. They argue the court should have instructed the offense of kidnapping during a carjacking requires that the purpose of the kidnapping was to facilitate a carjacking and, in addition, that the offense is not committed if the carjacking is merely incidental to the kidnapping.

■ We conclude the trial court properly instructed the jury with CALCRIM No. 1204 on the offense of kidnapping during a carjacking. As

quoted above, the jury *was* instructed one of the elements of that offense was that "the defendant *moved or caused the other person to move with the intent to facilitate the carjacking . . . .*" (Italics added.) That instruction adequately instructed the jury of the requirement that the kidnapping be done to facilitate the carjacking. (§ 209.5.) Defendants do not cite any case holding, nor are we persuaded, section 209.5 requires that the sole or primary purpose of the kidnapping be to facilitate the carjacking. Rather, it is sufficient if at least one of the intents or purposes of the kidnapping is to facilitate the carjacking.

Likewise, Defendants do not cite any case holding, and we are not persuaded, the trial court must instruct sua sponte that a section 209.5 offense is not committed if the carjacking is merely incidental to the kidnapping. Rather, the trial court's instruction with CALCRIM No. 1204 clearly sets forth all the elements of a section 209.5 offense, including the requirement that the kidnapping be done to facilitate the carjacking. To the extent Defendants assert the court should also have instructed the carjacking must be more than incidental to the kidnapping, we are not persuaded that instruction would be an accurate statement of the law. In any event, that instruction was not required to be given sua sponte and, because Defendants did not request such a clarifying or amplifying modification of CALCRIM No. 1204, they waived any purported instructional error. (*People v. Mace* (2011) 198 Cal.App.4th 875, 882 [129 Cal.Rptr.3d 500]; *People v. Scheer* (1998) 68 Cal.App.4th 1009, 1026 [80 Cal.Rptr.2d 676]; *People v. Andrews* (1989) 49 Cal.3d 200, 218 [260 Cal.Rptr. 583, 776 P.2d 285]; *People v. Estrada* (1995) 11 Cal.4th 568, 574 [46 Cal.Rptr.2d 586, 904 P.2d 1197].)

We also reject Defendants' assertion that the prosecutor's closing argument "invited the jury to convict [them] solely on the basis of a kidnapping simultaneously with a carjacking, without regard for the purpose of the kidnapping . . . ." The trial court instructed the jury: "You must follow the law as I explain it to you [(e.g., CALCRIM No. 1204)], even if you disagree with it. If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions." Absent affirmative evidence showing otherwise, we presume the jury followed the court's instructions. Therefore, to the extent the prosecutor may have misstated or inaccurately described applicable law, we conclude the jury ignored any such erroneous statements by the prosecutor and instead followed the trial court's instructions (e.g., CALCRIM No. 1204). Likewise, we reject Defendants' assertion that the jury was misled by the title of CALCRIM No. 1204 (i.e., "1204. Kidnapping: During Carjacking"). Absent affirmative evidence showing otherwise, we conclude the jury followed the substance of CALCRIM No. 1204's provisions and not its title, which presumably is truncated for purposes of convenience.

## IV

### *Ortiz's Sentence for Count 3*

Ortiz contends the trial court abused its discretion by imposing a consecutive, upper term for count 3 (Veh. Code, § 2800.2, subd. (a); evading a police officer with reckless driving). He argues the trial court did not cite adequate aggravating circumstances to support its imposition of the upper three-year term for count 3.

### A

■ A trial court has broad discretion in making sentencing choices. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847 [62 Cal.Rptr.3d 588, 161 P.3d 1146].) Nevertheless, a trial court is required to state its reasons for any sentencing choice (e.g., imposition of an upper term) on the record at the time of sentencing. (§ 1170, subd. (c)); *People v. Garcia* (1995) 32 Cal.App.4th 1756, 1769 [39 Cal.Rptr.2d 73].) One aggravating factor is sufficient to support the imposition of an upper term. (*People v. Davis* (1995) 10 Cal.4th 463, 552 [41 Cal.Rptr.2d 826, 896 P.2d 119]; *People v. Castellano* (1983) 140 Cal.App.3d 608, 614–615 [189 Cal.Rptr. 692].)

A defendant, or his or her counsel, must object at the time of sentencing if the trial court does not state any reasons or a sufficient number of reasons for a sentencing choice or double-counts a particular sentencing factor, and, if there is no objection, any error is deemed waived and cannot be challenged for the first time on appeal. (*People v. Scott* (1994) 9 Cal.4th 331, 353, 356 [36 Cal.Rptr.2d 627, 885 P.2d 1040] (*Scott*).) *Scott* stated: "We conclude that the waiver doctrine should apply to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices. Included in this category are cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons."[5] (*Scott, supra*, 9 Cal.4th at p. 353.)

### B

At Ortiz's sentencing, the trial court imposed the upper three-year term for count 3, stating: "I am going to impose [for] count 3, *based on the erratic driving*, [a term] of [three] years. That will run consecutive to the first count.

---

[5] *Scott* explained in part: "Routine defects in the court's statement of reasons are easily prevented and corrected if called to the court's attention." (*Scott, supra*, 9 Cal.4th at p. 353.)

[¶] [W]e need to keep the D.S.L. [(i.e., determinate sentencing law)] and I.S.L. [(i.e., indeterminate sentencing law)] separate." (Italics added.) The court also cited the *"horrific nature* of the chase." (Italics added.) Ortiz did not object to the trial court's cited factors of erratic driving and the horrific nature of the chase for imposing the upper three-year term for his count 3 conviction.

C

Pursuant to *Scott*, we conclude Ortiz waived, and cannot challenge on appeal, any error by the trial court in not citing adequate aggravating factors for imposing the upper three-year term for count 3 because he did not object below to his sentence on that ground. (*Scott, supra*, 9 Cal.4th at pp. 353, 356.) Had he timely and specifically objected below, the trial court presumably would have had an opportunity to correct, and could have corrected, any error.[6] (*Scott, supra*, 9 Cal.4th at p. 353.)

D

Ortiz argues that if he waived the trial court's error, he was denied his constitutional right to effective assistance of counsel when his counsel did not timely and specifically object below to the court's imposition of the upper three-year term for count 3 based on the factors of erratic driving and the horrific nature of the chase. (*Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, 104 S.Ct. 2052].) A defendant has the burden of proving a claim of ineffective assistance of counsel by showing that (1) his or her trial counsel's representation fell below an objective standard of reasonableness and (2) he or she was prejudiced (i.e., there is a reasonable probability that a more favorable determination would have resulted in the absence of counsel's deficient performance). (*Ibid.; People v. Kelly* (1992) 1 Cal.4th 495, 519–520 [3 Cal.Rptr.2d 677, 822 P.2d 385]; *People v. Ledesma* (1987) 43 Cal.3d 171, 215–218 [233 Cal.Rptr. 404, 729 P.2d 839]; *People v. Pope* (1979) 23 Cal.3d 412, 423–425 [152 Cal.Rptr. 732, 590 P.2d 859], disapproved on another ground in *People v. Berryman* (1993) 6 Cal.4th 1048, 1081, fn. 10 [25 Cal.Rptr.2d 867, 864 P.2d 40].) A reasonable probability is a probability sufficient to undermine confidence in the outcome. (*In re Harris* (1993) 5 Cal.4th 813, 833 [21 Cal.Rptr.2d 373, 855 P.2d 391].)

---

[6] To the extent Ortiz also argues the trial court erred by making the three-year term *consecutive* to his life term, he does not carry his burden on appeal to present any substantive analysis showing the trial court erred by making his determinate sentence consecutive to his indeterminate life term (or vice versa). In any event, he waived any error by not timely and specifically objecting to that purported error. (*Scott, supra*, 9 Cal.4th at pp. 353, 356.) Furthermore, any deficient performance by his counsel for not objecting was not prejudicial, as discussed below, and therefore he was not denied his right to effective assistance of counsel.

Because we conclude Ortiz has not carried his burden on appeal to show he was prejudiced by his counsel's purportedly deficient performance, we do not address the merits of whether his counsel's performance fell below an objective standard of reasonableness.[7] Rather, based on the record in this case, we conclude that, even had Ortiz's counsel timely and specifically objected to the court's purported error, it is not reasonably probable Ortiz would have obtained a more favorable outcome (i.e., a lesser term for count 3).

At sentencing, the trial court stated this was a "very serious" case in which the "evidence [was] overwhelming." It noted Arellano was "absolutely terrified" during the incident. She testified regarding the "horror that she went through at both being kidnapped and the erratic evading that took place afterwards." Regarding count 3, the court stated: "Mr. Martinez . . . wasn't alone in this. The other two [(i.e., Ortiz and Quezada)] participated in the evading, were convicted of evading based on facts before, during, and after the chase. But the entire population of people on the freeway at the time, including the police officers chasing them and the individuals in the car, were put at risk during that particular chase. [¶] During the chase weapons are thrown out of the vehicle." The court further found the crime involved planning.

Based on the trial court's statements at sentencing, there were at least five aggravating factors it could have cited as reasons for imposing the upper three-year term for count 3, as follows:

1. The offense involved a high degree of callousness. (Cal. Rules of Court, rule 4.421(a)(1).)[8]

2. Weapons were used in committing the offense. (Rule 4.421(a)(2).)

3. The victim (e.g., Arellano) was vulnerable. (Rule 4.421(a)(3).)

4. The offense was planned. (Rule 4.421(a)(8).)

5. The conduct was extremely dangerous to society. (Rule 4.421(b)(1).) Had Ortiz's counsel timely and specifically objected to the trial court's citation of the "horrific nature" and "erratic driving" involved in the offense as reasons for imposing the upper term, the trial court could have, and

---

[7] For purposes of this appeal, we assume arguendo Ortiz's counsel could not have had any rational tactical reason to not timely and specifically object to the trial court's sentencing of Ortiz on count 3 to an upper three-year term and therefore he may raise this issue on appeal (rather than in a petition for writ of habeas corpus).

[8] All rule references are to the California Rules of Court.

presumably would have, cited one or more of those other five factors as support for its decision to impose the upper three-year term for count 3. We believe the extreme danger to which the public was exposed would have, by itself, constituted an adequate ground for imposing the upper term.

Only one aggravating factor need be cited to support imposition of an upper term. (*People v. Davis, supra*, 10 Cal.4th at p. 552; *People v. Castellano, supra*, 140 Cal.App.3d at pp. 614–615.) Based on the trial court's statements at Ortiz's sentencing, we conclude it is not reasonably probable it would have imposed any lesser sentence had his counsel timely and specifically objected to the court's reasons for imposing the upper term for count 3. Alternatively stated, our confidence in the outcome is not undermined because of the purported error. (*In re Harris, supra*, 5 Cal.4th at p. 833.) The fact that the trial court cited "symmetry" in sentencing as a desirable goal and stayed execution of Martinez's three-year term for count 3 does not persuade us it is reasonably probable the court would have stayed execution of Ortiz's sentence for count 3 or imposed a lesser term than the upper three-year term.[9] Because Ortiz has not carried his burden to show he was prejudiced by his counsel's purported deficient performance, we conclude he was not denied his constitutional right to effective assistance of counsel. (*Strickland v. Washington, supra*, 466 U.S. at p. 687; *People v. Kelly, supra*, 1 Cal.4th at pp. 519–520; *People v. Ledesma, supra*, 43 Cal.3d at pp. 215–218; *People v. Pope, supra*, 23 Cal.3d at pp. 423–425; *In re Harris*, at p. 833.)

## V

### Unanimity Instruction

Quezada contends his convictions on counts 4 and 5 and his firearm enhancements for counts 1 and 2 must be reversed because the trial court did not give a unanimity instruction regarding the possible multiple acts of his firearm possession.

## A

In a criminal case, a defendant has the constitutional right to a unanimous jury verdict. (Cal. Const., art. I, § 16; *People v. Russo* (2001) 25 Cal.4th 1124, 1132 [108 Cal.Rptr.2d 436, 25 P.3d 641] (*Russo*).) Furthermore, "the jury must agree unanimously the defendant is guilty of a *specific* crime." (*Russo*, at p. 1132.) "Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same

---

[9] We note Martinez received an aggregate sentence greater than Ortiz's sentence.

criminal act. [Citations.] [¶] This requirement of unanimity as to the criminal act 'is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed.' " (*Ibid.*)

However, "where the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree on the basis or, as the cases often put it, the 'theory' whereby the defendant is guilty." (*Russo, supra*, 25 Cal.4th at p. 1132.) "It is settled that as long as each juror is convinced beyond a reasonable doubt that defendant is guilty of [a crime] as that offense is defined by statute, it need not decide unanimously by which theory he is guilty." (*People v. Santamaria* (1994) 8 Cal.4th 903, 918 [35 Cal.Rptr.2d 624, 884 P.2d 81].) *Russo* discussed examples of when there are multiple, discrete crimes requiring a unanimity instruction and when there is only one discrete crime based on multiple theories not requiring a unanimity instruction. (*Russo*, at pp. 1132–1133.) "[T]ypical examples include the rule that, to convict a defendant of first degree murder, the jury must unanimously agree on guilt of a specific murder but need not agree on a theory of premeditation or felony murder [citation], and the rule that the jury need not agree on whether the defendant was guilty as the direct perpetrator or as an aider and abettor as long as it agreed on a specific crime [citation]." (*Id.* at p. 1133.) Furthermore, "[n]ot only is there no unanimity requirement as to the theory of guilt, the individual jurors themselves need not choose among the theories, so long as each is convinced of guilt. *Sometimes, . . . the jury simply cannot decide beyond a reasonable doubt exactly who did what. There may be a reasonable doubt that the defendant was the direct perpetrator, and a similar doubt that he was the aider and abettor, but no such doubt that he was one or the other.*" (*Santamaria*, at p. 919, italics added.)

### B

The jury found Quezada guilty of count 4, possession of a firearm by a felon (former § 12021, subd. (a)(1)), and count 5, carrying a firearm in a vehicle (former § 12025, subd. (a)(3)). It also found true the allegations that in committing counts 1 and 2 Quezada, while not personally armed, was vicariously liable for possession of a firearm (§ 12022, subd. (a)(1)). The trial court did not give a unanimity instruction regarding the specific acts constituting counts 4 and 5 and the firearm enhancements to counts 1 and 2.

### C

Quezada asserts the trial court erred by not instructing sua sponte that the jurors must unanimously agree on the specific acts constituting counts 4 and

5 and the firearm allegations related to counts 1 and 2. He argues that because the evidence was conflicting regarding his actual or constructive possession of a firearm, there were multiple discrete acts or crimes that could have constituted those counts and allegations. Furthermore, because the prosecutor did not expressly elect as to the specific act or crime constituting the charged offense or allegation and inform the jurors of their need to unanimously agree on a specific act or crime, he argues the trial court was required to instruct sua sponte on that unanimity requirement.

Without discussing in detail the evidence at trial, we generally agree with Quezada that there is evidence from which jurors could have reasonably inferred he either (1) actually possessed a gun; (2) actually possessed a Taser; (3) constructively possessed Martinez's gun; or (4) constructively possessed Ortiz's Taser.[10] However, as the People argue, those separate "acts" did not constitute multiple discrete crimes or firearm allegations, but rather multiple "theories" of a single discrete crime or allegation. (*Russo, supra*, 25 Cal.4th at pp. 1132–1133; *People v. Santamaria, supra*, 8 Cal.4th at pp. 918–919.) If the jurors unanimously agreed beyond a reasonable doubt that Quezada *actually* possessed a gun or Taser or *constructively* possessed a gun or Taser, that agreement was constitutionally adequate for his convictions of the disputed counts and allegations. The jurors were not required to unanimously agree on the particular act or acts he did in committing each of those single discrete crimes and allegations. The jurors may not have unanimously agreed as to exactly what Quezada did (e.g., whether he actually or constructively possessed a firearm). But such unanimous agreement is not required for a conviction or true finding. Like the example of uncertainty regarding whether a defendant was the direct perpetrator or an aider and abettor, it is sufficient if the jurors unanimously agreed that Quezada did one or the other (actual or constructive possession of a gun or Taser), either of which would constitute the single discrete crime or allegation (e.g., count 4, count 5, count 1 firearm allegation, and count 2 firearm allegation). (*Russo*, at pp. 1132–1133; *Santamaria*, at pp. 918–919.) During the continuous course of conduct involved in this case, the jury unanimously found Quezada guilty of the single discrete crimes charged in counts 4 and 5 and found true the firearm allegations related to counts 1 and 2. The jurors were not required to unanimously agree on the particular theory regarding his acts constituting those single discrete crimes or allegations. (Cf. *Russo*, at p. 1135; *Santamaria*, at p. 920.) The trial court did not err by not giving a unanimity instruction.[11]

---

[10] For purposes of this opinion, we assume arguendo, as Quezada asserts, that a Taser is a firearm within the meaning of the statutes involved herein. (See *People v. Heffner* (1977) 70 Cal.App.3d 643, 652–653 [139 Cal.Rptr. 45].)

[11] We further note the prosecutor was not required to elect one of those theories as constituting the single discrete crime or allegation and inform the jurors they must unanimously agree on that particular theory. Nevertheless, the prosecutor apparently attempted to

*People v. Melhado* (1998) 60 Cal.App.4th 1529 [70 Cal.Rptr.2d 878], cited by Quezada, is inapposite to this case and does not persuade us to reach a contrary conclusion.

## VI

### *Section 654*

Quezada contends the trial court erred by not staying imposition of his three-year terms for counts 4 and 5 pursuant to section 654 because those counts involved the same indivisible course of conduct as the firearm enhancements to counts 1 and 2.

### A

Section 654, subdivision (a), prohibits multiple punishment for the same act, stating: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ." Section 654 prohibits only multiple punishment, not multiple convictions, for the same act. (*People v. Britt* (2004) 32 Cal.4th 944, 951 [12 Cal.Rptr.3d 66, 87 P.3d 812].)

The California Supreme Court has stated: "The test for determining whether section 654 prohibits multiple punishment has long been established: 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' (*Neal v. State of California* [(1960) 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839]].) A decade ago, we criticized this test but also reaffirmed it as the established law of this state. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1209–1216 [23 Cal.Rptr.2d 144, 858 P.2d 611].) We noted, however, that cases have sometimes found separate objectives when the objectives were either (1) consecutive even if similar or (2) different even if

---

elect among those theories by arguing in closing that Quezada was vicariously liable for Martinez's possession of a firearm.

simultaneous. In those cases, multiple punishment was permitted. [Citation.] . . . [¶] Section 654 turns on the *defendant's* objective in violating both provisions . . . ."[12] (*People v. Britt, supra*, 32 Cal.4th at pp. 951–952.)

"Whether section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination. [Citations.] Its findings will not be reversed on appeal if there is any substantial evidence to support them. [Citations.] We review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence." (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143 [127 Cal.Rptr.2d 319].) "[T]he power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted, which will support the determination, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. *If such substantial evidence be found, it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion.*" (*Bowers, supra*, 150 Cal.App.3d at pp. 873–874.)

## B

At sentencing, the trial court concluded there were no section 654 issues. By imposing concurrent three-year terms for counts 4 and 5, the trial court implicitly found Quezada had a separate intent and objective in committing those offenses from his intent and objective in committing counts 1 and 2 and using a firearm in committing those offenses.

Quezada asserts the trial court should have stayed execution of his three-year terms for counts 4 and 5 pursuant to section 654 because that conduct (i.e., firearm possession) involved the same intent and objective as the firearm enhancements to counts 1 and 2. He argues there was no evidence showing he possessed a firearm *before* he committed counts 1 and 2 (i.e., kidnapping during a carjacking) and used a firearm in committing those offenses. He notes the prosecution's witnesses testified three men jumped out of the Lincoln Navigator, the beginning of Defendants' conduct in committing counts 1 and 2. Quezada argues there was no evidence that he possessed a firearm prior to his conduct in committing counts 1 and 2.

We disagree with Quezada's assertion. Although there was no direct testimony that Quezada possessed a firearm before he committed counts 1

---

[12] We note that on June 21, 2012, the California Supreme Court issued its opinion in *People v. Correa* (2012) 54 Cal.4th 331 [142 Cal.Rptr.3d 546, 278 P.3d 809]. Based on our review of *Correa*, we conclude its holding does not apply to the circumstances in this case.

and 2, the trial court could reasonably infer from the circumstances that Quezada did, in fact, possess a firearm before he committed counts 1 and 2 and used a firearm in committing those offenses. The direct evidence showed Martinez threw his gun out of the BMW's window and two guns were later found along the pursuit route. The trial court could reasonably infer that one of the two guns was Quezada's. Furthermore, the court could reasonably infer Quezada possessed that firearm while riding in the Lincoln Navigator and/or while exiting that vehicle. Such possession preceded his conduct in committing counts 1 and 2.

■ "[S]ection 654 is inapplicable when the evidence shows that the defendant arrived at the scene of his or her primary crime already in possession of the firearm." (*People v. Jones, supra*, 103 Cal.App.4th at p. 1145.) Because there is substantial evidence to support a reasonable inference that Quezada arrived at the scene of the kidnapping during a carjacking already in possession of a firearm, we conclude the trial court did not err by concluding section 654 did not apply to preclude imposition of concurrent terms for counts 4 and 5. (*Jones*, at p. 1145.) There is no evidence showing that fortuitous circumstances placed the firearm in Quezada's hand only at the instant of the beginning of the kidnapping during a carjacking. (*Id.* at p. 1144.) We conclude there is substantial evidence to support the trial court's implied finding that Quezada harbored a separate intent and objective in committing counts 4 and 5 from his intent and objective in committing counts 1 and 2 and using a firearm in committing those offenses. To the extent Quezada argues there is evidence to support a contrary inference, he misconstrues and/or misapplies the substantial evidence standard of review. (*Id.* at p. 1143; *Bowers, supra*, 150 Cal.App.3d at pp. 873–874.) Therefore, we conclude the trial court properly found section 654 did not preclude its imposition of concurrent three-year terms for Quezada's convictions of counts 4 and 5.

## VII

### *In Camera Hearings*

Quezada requests that we independently review the sealed records of certain in camera hearings held by the trial court to determine whether the court abused its discretion in denying disclosure of any information sought by Defendants. The in camera hearings were held in 2010 on February 11, March 12, May 17, May 20, and May 21. We have received and reviewed the sealed records and conclude the trial court did not abuse its discretion in making its rulings at those in camera hearings.

## DISPOSITION

The judgments are affirmed.

Huffman, Acting P. J., and Haller, J., concurred.

Appellants' petition for review by the Supreme Court was denied December 12, 2012, S205790.