BAKER, J., Concurring in Part and Dissenting in Part
The interrogation of defendant Armando Bichara presents a textbook violation of *917 Miranda v. Arizona (1966) 384 U.S. 436, 86 S.Ct. 1602 (Miranda ). Not only did the interviewing detectives refuse to honor defendant's unambiguous invocation of his right to cut off further questioning during the interrogation,[1] the testimony of one of the detectives later at trial revealed a fundamental misunderstanding or unawareness of what Miranda and its progeny require.[2] *1289 I therefore concur in the judgment that the Miranda violation compels reversal of defendant's murder conviction.
I respectfully dissent, however, from the holding that the admission of the incriminating statements obtained in violation of Miranda did not prejudice the jury's finding that defendant kidnapped his girlfriend Guadalupe Montellano. I will summarize several reasons why; they involve my disagreement with the majority about the relationship between the murder and kidnapping charges, the mediocre quality of the video footage introduced at trial, and the fact that the video does not, and cannot, corroborate the key element of fear that Montellano emphasized as the reason why, according to her, she got in the car with defendant against her will.
I
It is true that defendant's statements obtained in violation of Miranda included no specific admission to kidnapping Montellano. But the murder and kidnapping charges that serve as the basis for defendant's convictions, at least as presented by the prosecution at trial, were so intertwined that a conviction on the kidnapping charge makes little if any sense when divorced from the murder charge.
Montellano's claim to have witnessed defendant stab Maria Ontiveros was the ostensible motive for why defendant, who was Montellano's boyfriend and living with her in her car, would have kidnapped her. At oral argument in this court, the People conceded the point, agreeing that the prosecution's theory at trial "was that the kidnapping was precipitated by the murder of Ontiveros" and that "the motive was that *918 she would not go to the police-so that's why he kidnapped her." (Rec. of Oral Arg., November 2, 2016.) Because the Miranda -tainted statements played a significant role in defendant's murder conviction, and because the facts concerning the murder served as motive evidence that must have informed the jury's guilty verdict on the kidnapping charge, the conclusion we must draw is unavoidable: the incriminating statements likewise played a significant role in defendant's kidnapping conviction regardless of whether he was questioned about kidnapping Montellano when interrogated by the detectives. (People v. Moore (2016) 6 Cal.App.5th 73, 85, 210 Cal.Rptr.3d 769 ["The prosecution need not, as we know, prove motive. Nevertheless, motive is *1290 relevant, and a strong motive provides powerful evidence"], citations omitted; see also People v. Cahill (1993) 5 Cal.4th 478, 503, 20 Cal.Rptr.2d 582, 853 P.2d 1037 ["[T]he improper admission of a confession is much more likely to affect the outcome of a trial than are other categories of evidence, and thus is much more likely to be prejudicial ..."].)
II
During trial, the prosecution introduced surveillance video footage that depicted, according to Montellano, her interactions with defendant near a bus stop. Unfortunately, the video is distant (meaning the camera is far from the events of interest), jumpy, pixelated, and static (meaning there is only one camera angle, and there are long stretches where no one is visible). The majority makes a good faith effort to characterize the quality of the video in a better light, but the overall state of the video evidence, in my view, is best described by the concessions that aspects of the footage are "not entirely clear" and "not clear enough."[3] (Maj. Opn. at p. 915.) Without a clearer depiction of what transpired, the video evidence cannot be a powerful reason why the Miranda violation did not prejudice the jury's kidnapping verdict.
Although I do not believe the majority opinion's narration of the video is what the video shows when "[o]bjectively viewed" (Maj. Opn. at p. 916), the opinion further reasons that defendant's refusal to admit what the majority believes the video shows can be used as evidence of his consciousness of guilt. I would not draw this conclusion, for both factual and legal reasons.
Factually, the video is not "irrefutable evidence" of defendant pulling the victim's dead body out of the car (Maj. Opn. at p. 915). The video by itself is not evidence of identity at all-given the mediocre quality of the footage, it is impossible to identify who is depicted in the video solely by viewing it. Nor do I believe the video by itself shows someone pulling a dead body from the car. The video does depict a person opening the rear door of the car and appearing to reach inside (there is a pole partially obstructing the view), but it is the testimony at trial-not the video itself-that supplies the important details. I accordingly believe there is no basis to conclude defendant's refusal to admit certain facts when interrogated by the detectives was tantamount to a denial of irrefutable video evidence. In fact, the detectives *1291 never actually confronted defendant with the video footage during the interrogation. For all defendant knew, the detectives were bluffing and there was no video. *919 Legally, I am concerned the "consciousness of guilt" holding in today's opinion is unsound and could be put to misuse in future cases. I see no valid reason why a defendant's post-arrest refusal to admit details of a crime (or perhaps a refusal to confess more generally) is, without more, reason to infer the defendant is conscious of his own guilt.[4] A person subject to questioning who does so refuse undoubtedly hopes to avoid punishment, but a desire to avoid punishment does not necessarily mean the person believes himself to be guilty. In addition, the majority's rationale has a "heads I win, tails you lose" quality to it: if a defendant concedes certain accusations of an interrogating officer are correct, he has directly incriminated himself; if he denies the accusations, according to the majority, he has shown himself to be conscious of his guilt and indirectly incriminated himself-at least if the evidence pertaining to the accusatory questions is sufficiently irrefutable in the eyes of a court (or of a prosecutor requesting a consciousness of guilt jury instruction at trial). I believe this sort of reasoning expands the consciousness of guilt doctrine beyond the circumstances in which it should apply. For that reason and the factual reasons I have already described, I do not believe the video evidence and/or a consciousness of guilt inference are sufficient reasons to conclude the Miranda violation did not prejudice the jury's kidnapping verdict.
III
I will make a final point, which focuses on Montellano's trial testimony about the charged kidnapping, specifically, the portion of her testimony that supported the element of kidnapping that requires proof she was unlawfully moved by the use of physical force or fear. (People v. Ortiz (2012) 208 Cal.App.4th 1354, 1368, 145 Cal.Rptr.3d 907 [" 'Generally, to prove the crime of [simple] kidnapping, the prosecution must prove three elements: (1)
*1292 a person was unlawfully moved by the use of physical force or fear; (2) the movement was without the person's consent; and (3) the movement of the person was for a substantial distance' "].) Montellano emphasized it was fear induced by an asserted threat from defendant that compelled her to leave with him, and the video evidence does not corroborate this aspect of her testimony.
Montellano testified as follows concerning the reason why she felt compelled to accompany defendant in the car when leaving the bus stop area:
Q [by the prosecutor]: As you were trying to cry out for help and pointing to the car, what was [defendant] doing?
A [by Montellano]: He was pulling me, telling me to stop.
Q: Did you end up going back to the car?
A: Yes.
*920 Q: Why did you end up going back to the car?
A: Because that's where he threatened me.
Q: What did he say that you found threatening? What was the threat?
A: That he was going to get my family.
Q: He said he was going to get your family?
A: My son.
Q: Specifically, your son?
A: Yes.
Q: Did you believe him?
A: Yes.
Q: Why did you believe him?
A: Because of everything that had happened.
Q: [¶] ... [¶] What had happened that made you believe he could get your son, or that he would get your son?
*1293 A: Because of what he did to my friend.[5]
(Emphasis added.)
While Montellano said defendant pulled her and grabbed her arm at points during their interaction near the bus stop, she testified it was defendant's threat to harm her son that compelled her to return with him to the car and drive off. This testimony served as the proof of the force or fear element of kidnapping.
The threat Montellano claimed defendant made cannot be heard on the video; the camera recorded no audio at all. That means that on the key issue of whether Montellano was unlawfully moved by fear, her testimony-impeachable for the reasons identified by the majority ante at pages 913 to 914-was largely if not entirely uncorroborated. Under the circumstances, and with the other points I have already discussed in mind, I cannot hold harmless the admission of the incriminating statements the detectives obtained in violation of Miranda . In my view, a new trial is required on both the murder charge and the kidnapping charge.

The majority opines that two statements defendant made before telling the detectives "I refuse to talk to you guys" do not qualify as unambiguous invocations of the right to remain silent. (Maj. Opn. at p. 912-913.) As is true in many instances where a court expresses a view on a point not necessary to its decision, the observation is inadvisable. There is binding and persuasive authority that suggests otherwise. (See, e.g., Berghuis v. Thompkins (2010) 560 U.S. 370, 382, 130 S.Ct. 2250 [if a defendant says "he d[oes] not want to talk to the police," that "simple, unambiguous statement" would invoke the right to cut off questioning]; People v. Villasenor (2015) 242 Cal.App.4th 42, 65, 194 Cal.Rptr.3d 796 [minor "defendant's repeated demands to be taken home, to have his parents called to pick him up, and to wait out the 48 hours," he could be held before charges filed unambiguously invoked his right to end the interrogation]; In re Z.A. (2012) 207 Cal.App.4th 1401, 1420-1421, 144 Cal.Rptr.3d 577 [accused unambiguously invoked her right to remain silent by saying she did not want to answer any more questions]; Jones v. Harrington (9th Cir. 2016) 829 F.3d 1128, 1139-1140 [Court of Appeal's determination that accused's statement, "I don't want to talk no more," was an ambiguous invocation is contrary to and an unreasonable application of Miranda ].)

At trial, defense counsel cross-examined one of the two interviewing detectives, asking whether he attempted to be "the more dominant person in the room" to "maintain control of the interrogation" when defendant stood up after telling the detectives he refused to talk to them. The detective answered, "No. What it is, the key here is that [defendant] wanted to end the interview , and his way of ending the interview is exiting the room." (Emphasis added.) Questioned further, the detective testified: "So as far as the fact that he slammed his hands on the table and stood up, I have to establish the ground rules that-not that I'm more intimidating or dominant, but the fact that I'm not going to tolerate ending the interview before the interview is over . So I have to stand my ground." (Emphasis added.)

The majority believes the video clearly shows defendant and Montellano engaging in a physical struggle and Montellano "struggling to escape defendant's grip[ ] as he tries to pull her to the car." The video does unquestionably depict some sort of brief struggle between two people. But it is not clear who started the struggle, what exactly transpired, or whether one of the participants is attempting to pull the other to the car.

I have no quarrel with the proposition that a defendant who affirmatively offers a highly implausible account of events can be found to have exhibited a consciousness of guilt. That was the scenario in the case of People v. Green (1980) 27 Cal.3d 1, 164 Cal.Rptr. 1, 609 P.2d 468, where the defendant "recounted that at 5 p.m. on the day of the murder he received a telephone call from Karen telling him she needed transportation to the Stickey Wicket bar and that he sent Dave Khan to pick her up for this purpose" even though the record was "replete with testimony by other witnesses relating different versions of the critical events told to them by [the] defendant" including "the fabrication of an alibi." (Id. at pp. 40-41, 164 Cal.Rptr. 1, 609 P.2d 468.) It is quite a different thing to hold, however, that a mere denial of an officer's incriminating accusation during an interrogation warrants a consciousness of guilt inference. All the more so if the defendant, as here, is never actually confronted with the evidence the officer cites when making the accusation.

The latter part of this exchange again highlights the interrelationship between the kidnapping charge and the murder charge (see Part I, ante ).