Filed 8/9/13  P. v. Pineda CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055505 |
| v. | (Super.Ct.No. RIF10001026) |
| SALVADOR ALEJANDRO PINEDA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Edward D. Webster, Judge.  Affirmed in part; reversed in part and remanded for resentencing.

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Michael Pulos, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant and appellant Salvador Alejandro Pineda, guilty of

(1) willful, deliberate, and premeditated attempted murder (Pen. Code, §§ 664, 187,

1

subdivision (a));[1] (2) mayhem (§ 203); (3) two counts of assault with a firearm (§ 245, subd. (a)(2)); and (4) active participation in a criminal street gang (§ 186.22, subd. (a)). In regard to the convictions for attempted murder and mayhem, the jury found true the enhancement allegations that defendant (1) committed the crimes to benefit a criminal street gang (§ 186.22, subd. (b)), and (2) discharged a firearm causing great bodily injury while committing the offenses (§ 12022.53, subd. (d)). As to both convictions for assault with a firearm, the jury found true the enhancement allegations that defendant committed the crimes to benefit a criminal street gang (§ 186.22, subd. (b)). For one of the assault convictions, the jury also found true the enhancement allegation that defendant inflicted great bodily injury (§ 12022.7, subd. (a)); however, that allegation was dismissed during sentencing. The trial court sentenced defendant to life, plus 25 years to life, plus 13 years.

Defendant raises two issues on appeal. First, defendant asserts substantial evidence does not support the finding that Varrio Pecan's primary activities were the enumerated criminal acts in the gang statute. (§ 186.22, subd. (f).) Therefore, defendant contends his conviction for active participation in a criminal street gang (§ 186.22, subd. (a)) must be reversed, as well as the enhancements for (1) committing crimes to benefit a criminal street gang, and (2) vicarious discharge of a firearm (§ 12022.53, subds. (d) & (e)(1)). Second, defendant contends the trial court incorrectly sentenced him to a 10-year term for the gang enhancement associated with one of the

---

[1] All subsequent statutory references will be to the Penal Code unless indicated.

2

assault convictions. The People agree with defendant's sentencing contention. We affirm in part and reverse in part with directions.

## FACTUAL AND PROCEDURAL HISTORY

Defendant is an active member of the Varrio Pecan street gang. Defendant asked Manuel Reyes (Reyes) if he wanted to become a member of Varrio Pecan because Reyes had been "hanging around" with members of the gang. Defendant told Reyes that Reyes would be "jumped-in" to Varrio Pecan. Reyes declined, because he was from Orange County and Varrio Pecan is based in Moreno Valley. Defendant and other members of Varrio Pecan became upset that Reyes declined the invitation.

On February 26, 2010, members of Reyes's family were standing in front of a relative's house, when a burgundy SUV drove toward the house. There were two people in the front seats of the SUV and three people in the back seat. Defendant was in the SUV, seated behind the driver. The SUV proceeded toward the house "very slowly." As the SUV approached, the window next to defendant rolled down approximately halfway. The SUV stopped in front of Reyes's relative's home and the tip of a gun could be seen protruding from the window next to defendant's seat.

Two shots were fired. Two of Reyes's relatives were struck—Pedro and Ernesto. After the second shot, the SUV drove away. The ammunition used was pellets. Pedro was injured on the left side of his face and body. Pedro continued to suffer blurry vision in his left eye.

## DISCUSSION

### A.     PRIMARY ACTIVITIES

Defendant contends substantial evidence does not support the finding that Varrio Pecan's primary activities were the enumerated criminal acts in the gang statute. (§ 186.22, subd. (f).)  We disagree.

"When an appellant challenges a criminal conviction based on a claim of insufficiency of the evidence, 'the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.]  'Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact.  [Citation.]  Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction.'  [Citation.]"  (*People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1362.)

In order to satisfy the statutory definition of a "criminal street gang" the alleged gang must have "as one of its primary activities the commission of one or more of the criminal acts enumerated" in section 186.22.  (§ 186.22, subd. (f).)  Some of the enumerated offenses include:  (1) assault with a deadly weapon or by means of force likely to produce great bodily injury, (2) the sale of a controlled substance, (3) shooting from a motor vehicle, (4) witness intimidation, and (5) carrying a loaded firearm. (Former § 186.22, subd. (e)(1), (4), (6), (8), (23) & (33) [eff. Jan. 1, 2010].)  "'Evidence

of past or present conduct by gang members involving the commission of one or more of the statutorily enumerated crimes is relevant in determining the group's primary activities.' [Citation.] 'The phrase "primary activities," as used in the gang statute, implies that the commission of one or more of the statutorily enumerated crimes is one of the group's "chief" or "principal" occupations. [Citation.] That definition would necessarily exclude the occasional commission of those crimes by the group's members.' [Citation.] 'Sufficient proof of the gang's primary activities might consist of evidence that the group's members consistently and repeatedly have committed criminal activit[ies] listed in the gang statute. Also sufficient might be expert testimony, as occurred in [*People v.*] *Gardley* [(1996)] 14 Cal.4th 605[, 620]. There, a police gang expert testified that the gang of which defendant Gardeley had for nine years been a member was primarily engaged in the sale of narcotics and witness intimidation, both statutorily enumerated felonies. [Citation.]' [Citation.]" (*People v. Perez* (2004) 118 Cal.App.4th 151, 159-160.)

Riverside County Sheriff's Detective Colmer (Colmer) testified as a gang expert at defendant's trial. Colmer has 250 hours of training specific to gangs, he has worked on gang cases for his entire 15-year career, he has testified as a gang expert approximately 250 times, and several of those times he testified about Varrio Pecan. Colmer began interviewing members of Varrio Pecan in 2001 or 2002. Colmer interviewed a founding member of Varrio Pecan on "numerous" occasions and learned about how the gang was formed.

5

On February 26, 2010, Varrio Pecan was comprised of approximately 20 members. At the time of trial in September 2011, the gang was reduced to approximately 10 members, due to many of the members having been arrested and incarcerated for violent crimes, such as attempted murder. Colmer estimated he had investigated "over 20" crimes involving members of Varrio Pecan. Colmer had also reviewed the reports of other deputies who investigated crimes by members of Varrio Pecan. Colmer testified Varrio Pecan's "primary activities are narcotic sales, vehicle thefts, and violent felony assaults."

As an example, Colmer discussed a crime committed on February 6, 2006, by Varrio Pecan member Jose Herrera. Herrera committed a series of assaults against a victim in Moreno Valley. Herrera attempted to run over the victim and then committed a drive-by shooting, wherein the victim was shot three times. One of the bullets lodged in the victim's spine, paralyzing him. Four members of Varrio Pecan were in the car during the February 6 shooting. All four members were prosecuted for that shooting. Jose Herrera was found guilty of deliberate, willful, and premeditated attempted murder. It was found that the attempted murder was committed to benefit a criminal street gang.

As a second example, Colmer discussed the criminal activity of Varrio Pecan member Roberto Camacho. Colmer has known Camacho for eight to ten years due to probation searches and other contacts. On October 1, 2009, Camacho was in possession of a loaded firearm in a public place; specifically, he was found at a street intersection with a firearm. Camacho had also been found on other occasions with guns. For the

6

October 1 offense, Camacho pled guilty to carrying a loaded firearm in a public place. (§ 12031, subd. (a).)

As a third example, Colmer presented the criminal activity of Varrio Pecan member Carlos Alvarado. Alvarado was convicted of stabbing a victim on June 29, 2009. The conviction took place on December 10, 2009, and the crime was assault with a deadly weapon or assault by means of force likely to create great bodily injury.

During an interview with Sheriff's deputies, Reyes said members of Varrio Pecan warned him not to talk to police. The gang members told Reyes "not to talk to the police, and don't be a snitch, and don't be a rat . . . ." In regard to what would happen to Reyes if he spoke to law enforcement, members of Varrio Pecan spoke about "that guy that they sewed up and they burned him." Reyes also mentioned that Varrio Pecan member William "Willie" Camacho "slings some weed," i.e., sells marijuana, "every now and then."

The foregoing evidence reflects members of Varrio Pecan committed crimes such as (1) violent felonies, e.g. shootings and stabbings; (2) witness intimidation; (3) drug sales; and (4) possession of firearms. All of these offenses fall within the enumerated offenses of section 186.22, subdivision (e), which, as set forth *ante*, includes assault with a deadly weapon or by means of force likely to produce great bodily injury, (2) the sale of a controlled substance, (3) shooting from a motor vehicle, (4) witness intimidation, and (5) carrying a loaded firearm. (Former § 186.22, subd. (e)(1), (4), (6), (8), (23) & (33) [eff. Jan. 1, 2010].) Given that a gang of 20 people was reduced to a gang of 10 people over a time period of approximately 18 months, due to

7

"many" of the gang members being arrested and incarcerated, it can be inferred that criminal activity is a consistent and repeated (not occasional) activity for the Varrio Pecan gang members. Accordingly, based upon the foregoing evidence, we conclude substantial evidence supports the finding that Varrio Pecan's primary activities included the commission of one or more of the criminal acts enumerated in section 186.22, subdivision (e).

Defendant asserts there is not substantial evidence to support the "primary activities" finding because Colmer testified that Varrio Pecan's "primary activities are narcotic sales, vehicle thefts, and violent felony assaults"; however, there was nothing supporting the opinion concerning narcotic sales and vehicle thefts. We agree that the evidence did not include a specific example of a Varrio Pecan member committing a vehicle theft. Nevertheless, defendant's argument is not persuasive because the record contains credible, solid evidence about members of Varrio Pecan committing a variety of enumerated offenses, as discussed *ante*, thereby satisfying the substantial evidence standard.

B.    <u>GANG ENHANCEMENT SENTENCE</u>

Defendant contends the trial court erred by sentencing him to a 10-year term for the gang enhancement in Count 4, which involved an assault conviction, because the jury found untrue the allegation that defendant personally used a firearm. The People support defendant's contention. We agree.

In 2010, the sentencing scheme for the gang enhancement provided a defendant shall be sentenced to a prison term of 10 years if he commits a "violent felony, as

8

defined in subdivision (c) of Section 667.5." (Former § 186.22, subd. (b)(1)(C).) In 2010, section 667.5, subdivision (c)(8) defined a "violent felony" as including "[a]ny felony in which the defendant inflicts great bodily injury . . . or any felony in which the defendant uses a firearm which use has been charged and proved as provided in subdivision (a) of Section 12022.3, or Section 12022.5 or 12022.55."

The trial court imposed a 10-year term for the gang enhancement in Count 4. In Count 4, defendant was found guilty of assault with a firearm on Ernesto. (§ 245, subd. (a)(2).) The jury found true the allegation that the crime was committed to benefit a criminal street gang. (§ 186.22, subd. (b).) The jury found *untrue* the allegation that defendant personally used a shotgun to commit the offense. (§§ 12022.5, subd. (a), 1192.7, subd. (c)(8).) There was not a finding that defendant inflicted great bodily injury on Ernesto or that defendant used a firearm as provided in section 12022.5. Thus, the trial court erred by imposing a 10-year term for the gang enhancement in Count 4.

The second sentencing option for the 2010 gang enhancement was a five-year term if the substantive offense was "a serious felony, as defined in subdivision (c) of Section 1192.7." (Former § 186.22, subd. (b)(1)(B).) In 2010, section 1192.7, subdivision (c)(8), defined "serious felony" as including "any felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice, or any felony in which the defendant personally uses a firearm." As set forth *ante*, the jury found the section 1192.7, subdivision (c)(8) allegation to be untrue. Thus, defendant could not be sentenced to a five-year prison term for the gang enhancement in Count 4.

9

Given the foregoing analysis, the only sentencing option that comports with defendant's crime is the third sentencing provision set forth in the 2010 gang statute, which provides for "an additional term of two, three, or four years at the court's discretion." (Former § 186.22, subd. (b)(1)(A).) Accordingly, we will reverse defendant's sentence for the gang enhancement in Count 4, so the trial court may exercise its discretion regarding the length of the prison term.

## DISPOSITION

Defendant's sentence for the gang enhancement (§ 186.22, subd. (b)) in Count 4 is reversed and the matter is remanded to the trial court for a resentencing hearing on this count consistent with the views expressed in this opinion. After resentencing, the court is further directed to forward an amended abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

RAMIREZ
P. J.

CODRINGTON
J.

10