Filed 10/10/13  P. v. Phillips CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>EMMANUEL PHILLIPS,<br><br>    Defendant and Appellant. | E055866<br><br>(Super.Ct.Nos. RIF145538 &<br>RIF148738)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Bernard Schwartz, Judge.  Affirmed in part; reversed in part with directions.

David McNeil Morse, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Eric A. Swenson, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant guilty of (1) one count of willful, deliberate, premeditated murder (Pen. Code, § 187, subd. (a));[1] (2) three counts of attempted willful, deliberate, premeditated murder (§§ 664, 187, subd. (a)); and (3) one count of assault with a deadly weapon (§ 245, subd. (a)(1)). The jury found true the allegations that (1) during the murder and one of the attempted murders defendant discharged a firearm causing death or great bodily injury to another person (§ 12022.53, subd. (d)); (2) during the two other attempted murders, defendant discharged a firearm (§ 12022.53, subd. (c)); and (3) during the assault, defendant (a) inflicted great bodily injury (§ 12022.7, subd. (a)); and (b) used a deadly and dangerous weapon (§ 12022, subd. (b)(1)). The trial court sentenced defendant to prison for a determinate term of 47 years, and an indeterminate term of 75 years to life, plus three consecutive life terms.

Defendant raises two issues on appeal. First, defendant contends the evidence supporting the three attempted murder convictions does not meet the substantial evidence standard. Second, defendant asserts his trial counsel was ineffective for failing to object to the prosecutor's argument concerning concurrent intent. We reverse the attempted murder convictions.

## FACTUAL AND PROCEDURAL HISTORY

The murder victim was Ezekiel Triplett (Triplett). The attempted murder victim who suffered an injury was Wayne Yoakum (Yoakum). The two other attempted

---

[1] All subsequent statutory references will be to the Penal Code unless otherwise indicated.

murder victims were Anthony Hardy (Hardy) and Johaun Williams (Williams). The four men were friendly with one another.

On October 31, 2008, at 9:00 or 10:00 p.m. (Halloween night), Triplett, Yoakum and Hardy were at a fast food restaurant on Iris Avenue in Moreno Valley. After purchasing food, the men exited the restaurant and gathered in the parking lot. Defendant was at the fast food restaurant with Lonnie Pearson (Pearson).

Triplett, Hardy and a group of other people moved toward the sidewalk, and discussed attending a Halloween party. Defendant and Pearson walked by Triplett's group without incident and proceeded down the street. An individual, identified only as Larry, encouraged Triplett to confront Pearson, because defendant had allegedly stabbed Williams's brother on a prior occasion and Pearson supposedly "snitched" on Williams's brother; Williams and Triplett were very close friends.

Triplett called Williams, who lived near the fast food restaurant. Triplett spoke to Williams about his brother's stabbing. Triplett and Williams concluded defendant was the person who stabbed Williams's brother. Triplett instructed Williams to "'Come outside.'" Williams exited his house and saw Hardy, Yoakum, Ramon Kelly and Daryl Dagley with Triplett. Williams also saw people he did not know walking around celebrating Halloween.

Triplett told Williams he saw defendant and Pearson walk down the street. When defendant and Pearson were approximately 50 to 100 yards away from Triplett's group, the group began following defendant and Pearson. Triplett's group consisted of four or five people. Defendant and Pearson stopped near the entrance to a

3

condominium complex. Triplett was walking approximately 15 feet ahead of the group, and approached defendant and Pearson. When Triplett was approximately three feet away from Pearson, while the rest of the group remained 10 to 15 feet behind Triplett, Triplett said, "'What's up?'" to Pearson in an acrimonious manner. Within seconds of the question being asked, defendant removed a gun from his coat, pointed it at Triplett, and fired.

After being shot, Triplett "jumped back, . . . turned around and ran." Other people in the area began "scattering" when the first shot was fired. Defendant continued shooting toward Triplett and then pointed the gun toward the group and fired. Defendant fired five or six shots in rapid succession. Williams did not run away when the shots were fired. He personally observed defendant point the gun at Triplett's group and fire. Ramon Kelly also saw defendant firing the gun directly at the group. After Triplett ran approximately 20 feet, he collapsed. Williams returned to his house and called 911.

Yoakum, who ran from the shots, stopped running when he realized he had been shot in the buttocks. Yoakum stopped approximately 50 yards from where Triplett fell. Williams saw Yoakum on the ground "at the end of the condominium complex." During closing arguments, the prosecutor set forth a "kill zone" theory in support of the attempted murder charges. (*People v. Bland* (2002) 28 Cal.4th 313, 331.)[2]

---

[2] The assault conviction involves events occurring on a different date than the murder and attempted murders. The facts concerning the assault are omitted from this opinion because they are not relevant to the issues on appeal.

# DISCUSSION

## A.     SUBSTANTIAL EVIDENCE

Defendant contends the evidence supporting the three attempted murder convictions does not meet the substantial evidence standard.  We agree.

Under the substantial evidence standard of review, we "'review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]  'Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact.  [Citation.]  Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction.' [Citation.]" (*People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1362.)

"'"The mental state required for attempted murder has long differed from that required for murder itself.  Murder does not require the intent to kill.  Implied malice—a conscious disregard for life—suffices.  [Citation.]" [Citation.]  In contrast, "[a]ttempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." [Citations.]' [Citation.]" (*People v. McCloud* (2012) 211 Cal.App.4th 788, 796-797 (*McCloud*).)

In *Bland*, our Supreme approved the kill zone theory, which "yields a way in which a defendant can be guilty of the attempted murder of victims who were not the defendant's 'primary target.' [Citation.]  Under *Bland*, 'a shooter may be convicted of

5

multiple counts of attempted murder on a "kill zone" theory where the evidence establishes that the shooter used lethal force *designed and intended to kill everyone in an area around the targeted victim* (i.e., the "kill zone") as the means of accomplishing the killing of that victim. Under such circumstances, a rational jury could conclude beyond a reasonable doubt that the shooter intended to kill not only his targeted victim, but also all others he knew were in the zone of fatal harm.' [Citation.] Examples include 'using an explosive device with intent to kill *everyone* in the area of the blast, or spraying a crowd with automatic weapon fire, a means likewise calculated to kill *everyone* fired upon.' [Citation.] (*McCloud*, *supra*, 211 Cal.app.4th at p. 797.)

"The kill zone theory thus does *not* apply if the evidence shows only that the defendant intended to kill a particular targeted individual but attacked that individual in a manner that subjected other nearby individuals to a risk of fatal injury. Nor does the kill zone theory apply if the evidence merely shows, in addition, that the defendant was aware of the lethal risk to the nontargeted individuals and did not care whether they were killed in the course of the attack on the targeted individual. Rather, the kill zone theory applies only if the evidence shows that the defendant tried to kill the targeted individual by killing everyone in the area in which the targeted individual was located. The defendant in a kill zone case chooses to kill everyone in a particular area as a means of killing a targeted individual within that area. In effect, the defendant reasons that he cannot miss his intended target if he kills everyone in the area in which the target is located." (*McCloud*, *supra*, 211 Cal.App.4th at pp. 797-798.)

6

The evidence in the instant case reflects defendant shot Triplett at point blank range, and then began shooting at the group. For example, Williams testified, "[T]he first shots looked like they were directed at [Triplett], then after that just wherever." The evidence reflects defendant shot Triplett, and then went on to shoot other people. As a result, there is an important piece of evidence missing—evidence that defendant was trying to kill people in the crowd so that he could kill Triplett. The evidence only reflects defendant shot Triplett and then shot at the crowd. There is nothing indicating an intent to attack the group in order to assure Triplett's death; it appears Triplett was shot and then defendant shot at the group.

If we inferred Triplett, after being shot, turned and ran toward the group, so that defendant was shooting toward the group while shooting at Triplett, there is still only evidence that defendant intended to kill a particular targeted individual but attacked that individual in a manner that subjected other nearby individuals to a risk of fatal injury. This type of evidence does not support the kill zone theory. Instead, there must be evidence that defendant intended to kill the larger group.

Thus, there are two ways to interpret the evidence (1) defendant shot Triplett, and then turned the gun away from Triplett, toward the group or "wherever"; and (2) defendant continued shooting at Triplett as Triplett moved toward the group. Under either interpretation of the evidence, defendant was not trying to kill people in the group in order to facilitate the death of Triplett. Under the first theory, defendant finished Triplett's murder, and then began trying to kill others. Under the second theory,

7

defendant subjected people around Triplett to a risk of fatal injury when trying to kill

Triplett, but was not actively intending to kill the people around him.

The problem is that the prosecution failed to present evidence that defendant had

the intent to kill the larger group. It appears the prosecution understood the kill zone

theory as applying in a situation where a defendant intends to kill a particular individual

but during the attack exposes others to a risk of fatal injury, which is an incorrect

understanding of the law. (*McCloud*, *supra*, 211 Cal.App.4th at p. 798.) During closing

arguments, the prosecutor described the intent requirement for the attempted murder/kill

zone theory as "reckless[ness]." Recklessness is not the intent requirement for the kill

zone theory. Rather, there must be evidence that the defendant had concurrent intents of

killing Triplett and the larger group. (*People v. Smith* (2005) 37 Cal.4th 733, 746 [kill

zone theory requires concurrent intent].) There is no evidence here of an intent to kill

the larger group as a means of accomplishing Triplett's murder. Accordingly, we

conclude substantial evidence does not support the three attempted murder convictions.[3]

The People contend there is substantial evidence to support the kill zone theory

of attempted murder because Williams, Hardy and Yoakum were near Triplett when

defendant was shooting. The People's argument is not persuasive because more than

---

[3] As we will discuss *post*, the prosecutor failed to argue a theory of conventional attempted murder. The prosecutor also failed to argue an alternative theory of assault with a deadly weapon. The only theory of guilt presented to the jury was the kill zone theory. Therefore, our analysis is limited to whether there is substantial evidence to support a conviction based upon the kill zone theory. We may not consider theories that were never presented to the jury, such as conventional attempted murder and/or assault with a deadly weapon. (*People v. Kunkin* (1973) 9 Cal.3d 245, 251.)

geographical proximity is needed to prove a kill zone theory. The geographical proximity shows only that defendant placed Williams, Hardy, and Yoakum at a risk of being harmed while defendant tried to kill Triplett. In order to prove the kill zone theory, there must be evidence that defendant intended to kill the larger group as a means of killing Triplett. Here, the evidence reflects defendant was (1) shooting at the group after finishing shooting Triplett; or (2) shooting at Triplett while creating a risk of harm to the group. The prosecution failed to provide evidence that defendant intended to kill everyone so as to have Triplett be included among the fallen. As a result, we find the People's geographical proximity argument to be unpersuasive.

Next, the People assert there is substantial evidence to support a conventional, non-kill zone theory, of attempted murder. While the People may be correct, it is inconsequential. We "cannot look to legal theories not before the jury in seeking to reconcile a jury verdict with the substantial evidence rule. [Citation.]" (*People v. Kunkin*, *supra*, 9 Cal.3d at p. 251.) In this case, the prosecutor argued only the kill zone theory to support the attempted murder charges. The trial court instructed the jury it must find a kill zone was created in order to convict defendant on the three attempted murder charges.

The trial court's instruction read: "A person may intend to kill a specific victim or victims and at the same time intend to kill everyone in a particular zone of harm or 'kill zone.' In order to convict the defendant of the attempted murder of Wayne Yoakum, Anthony Hardy and or Johaun Williams, the People *must* prove that the defendant *not only* intended to kill Ezekiel Triplett *but also* either intended to kill any of

9

the above individuals, or intended to kill everyone within the kill zone." (CALCRIM No. 600, italics added.)

Since the instruction tied the attempted murder findings to Triplett's murder, i.e., the attempted murder convictions hinged on defendant intending to kill Triplett, the only way to interpret the instruction is that the kill zone theory was the sole theory presented to the jury. This is the only reasonable interpretation because a kill zone theory relies on concurrent intent, thus the intent to kill Triplett must exist concurrently with the intent to the other alleged victims. (See *People v. Smith*, *supra*, 37 Cal.4th at p. 746 [kill zone is based on concurrent intent to kill the targeted victim and the group].) The prosecution failed to argue a theory of conventional attempted murder. The jury was not instructed that it could find defendant guilty on a theory of conventional attempted murder. As a result, even if substantial evidence supports a finding of conventional attempted murder, we could not affirm on that basis.

Defendant was sentenced to three consecutive life terms for the attempted murder convictions. Defendant was also sentenced for the firearm enhancements associated with the convictions. As a result of the reversal, defendant's sentence must be modified to reflect a determinate term of seven years, and an indeterminate term of 50 years to life.

B.     INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends his trial counsel was ineffective because he failed to object when the prosecutor misstated the law concerning the attempted murder intent requirement. We have concluded *ante*, that defendant's three attempted murder

convictions must be reversed due to a lack of substantial evidence supporting the kill zone theory. As a result, defendant's ineffective assistance of counsel assertion is moot because this court can offer no further relief. (*People v. Travis* (2006) 139 Cal.App.4th 1271, 1280.)

## DISPOSITION

Defendant's attempted murder convictions (§§ 664, 187) in Counts 3, 4, and 5, along with their associated enhancements, are reversed. The trial court is directed to prepare amended abstracts of judgment reflecting defendant's determinate sentence is seven years, and his indeterminate sentence is 50 years to life. The trial court is directed to forward the amended abstracts of judgment to the appropriate agencies. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____

J.

We concur:

HOLLENHORST _____

Acting P. J.

McKINSTER _____

J.

11