Filed 5/17/23  P. v. Casimiro CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RAYMUNDO LOPEZ CASIMIRO,<br><br>Defendant and Appellant. | F083362<br><br>(Super. Ct. No. MCR065074)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County.  Dale J. Blea, Judge.

Joshua L. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Paul E. O'Connor, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury convicted defendant Raymundo Lopez Casimiro of committing three sex offenses against a 13-year-old girl in one incident.  He raises two issues on appeal.  First, he claims the prosecutor during closing argument misstated the law about the

**SEE CONCURRING OPINION**

presumption of innocence. Second, he argues he is entitled to a new sentencing hearing because of Senate Bill No. 567's (2021—2022 Reg. Sess.) (S.B. 567) amendments to Penal Code section 1170, subdivision (b).[1] We reject his first claim but agree his sentence must be reversed and the matter remanded for resentencing due to the changes made to section 1170. The judgment is therefore affirmed in part and reversed in part.

## STATEMENT OF THE CASE

An information charged Casimiro with aggravated sexual assault of a child by rape (§§ 269, subd. (a)(1), 261, subd. (a)(2); count 1), forcible sexual penetration of a child under age 14 (§ 289, subd. (a)(1)(B); count 2), and forcible lewd acts on a child under age 14 (§ 288, subd. (b)(1); count 3).

Casimiro's first trial ended in a mistrial, but the jury in the second trial convicted him of the charged offenses. The court sentenced him to the upper term of 12 years on count 2, plus the upper term of 10 years on count 3 to run consecutively to the term imposed on count 2, for a total determinate term of 22 years. The court also sentenced him to an indeterminate term of 15 years to life in count 1.

## FACTS

### I. Prosecution's case

In February 2016, when she was 13 years old, F. moved from Mexico to the United States to live with her aunt and uncle in Madera. Within days of moving into her aunt's apartment, she got a job as an agricultural worker, working with her aunt and uncle at a place where Casimiro was the foreman.

Casimiro was born in 1984 and lived in the apartment next door to F.'s aunt and uncle. He sometimes grabbed and hugged F. at work, and he told her she had pretty eyes. F. got a different job in summer 2016 and no longer worked with Casimiro.

---

[1] Undesignated statutory references are to the Penal Code.

One day in August 2016, when she was still 13, F. stayed home because she was told there was no work for her that day. Her aunt and uncle went to work and she stayed home alone. Around noon, she took the trash out and saw Casimiro outside in his van. She went back inside and lied down on the recliner in the living room. She was lying face up, partly covered with a blanket, and looking at her phone when she heard the front door opening. She pulled the blanket over her head and pretended to be asleep. She did not see that it was Casimiro coming inside.

Casimiro took the blanket off F. and knelt next to her. F. asked him what he was doing inside the apartment, and Casimiro said that F.'s aunt intended to sell her to him. Casimiro grabbed F.'s hands, putting them in one of his hands, and got on top of her. He used his other hand to take off F.'s shorts and underwear. He touched her vagina with his hand and digitally penetrated her for "quite a while." He removed his finger and inserted his penis into her vagina and had sexual intercourse with her, also for "quite a while." F. told Casimiro that he was hurting her and asked him to stop. F. tried resisting but was too weak. Casimiro stopped having sex with her when she started bleeding from her vagina.

Casimiro ran from the apartment soon after F. began bleeding. But before he left he told F. that her aunt told him she (F.) wasn't working that day, and said that her aunt knew what he planned to do. He also said that "they" would not believe her anyway. F. testified the assault felt like it lasted over an hour, but she did not know for sure.

F. threw away the blanket and the clothes she had been wearing because she wanted no one to see the blood. She testified she felt dirty. She walked to the home of a friend from her new job and moved in with her. She did not call police because she thought that she would be "taken away" because she was a minor.

F. lived with her friend for about two months. During that time, she told her father, who was still in Mexico, that she wanted to move to Salinas. She testified she wanted to move there because there was more work and it was not as hard. Her father put her in touch with a friend in Salinas named Guadalupe and F. moved in with her.

3.

About two years after the rape, F. told Guadalupe what Casimiro did to her, and Guadalupe's husband called police.

F. spoke with a Salinas police detective. In October 2019, the detective set up a pretext phone call between F. and Casimiro using the detective's department-issued phone, which was recorded and played for the jury. During the short call, F. talked about Casimiro raping her, but Casimiro denied wrongdoing. Throughout that night and into the next morning, Casimiro repeatedly called the detective's phone but the detective did not answer.

The detective, posing as F., exchanged text messages with Casimiro. Printouts of the text messages were admitted as an exhibit. Casimiro also sent an audio message to the detective's phone which was also played for the jury. In the text messages, the detective told Casimiro that she (F.) wanted to move back to Madera and wanted him to promise not to rape her again if she moved back. Casimiro replied, "[W]hy do you say that if you know that it wasn't like that[?]" The detective asked, "Do you promise not to have sex with me again?" Casimiro replied, "Why[?]" The detective said, "Because I'm a child[.]" Casimiro answered, "I don't think so[.]" Casimiro never admitted to raping her but also never denied having sex with her. Casimiro told her that he had loved her and offered to get F. her own apartment if she moved back to Madera.

## II. Defense case

Casimiro testified in his own defense and denied having any sexual contact with F. and denied going into F.'s apartment. He claimed he called and texted F. because he wanted to know why she was making these allegations against him.

## DISCUSSION

## I. No prosecutorial misconduct

Casimiro contends the prosecutor committed misconduct and violated his federal due process rights by stating in his closing argument that "the presumption of innocence no longer applies." The People contend the issue was forfeited below for failure to

4.

object, and Casimiro claims his counsel was ineffective for failing to object. We conclude the prosecutor's remarks were permissible under relevant case law, and we thus need not address forfeiture or assess counsel's performance.

### A.     Additional facts

Before closing argument, the court orally instructed the jury that the defendant in a criminal case is presumed innocent and that this presumption requires the prosecution to prove the defendant guilty beyond a reasonable doubt. The jury also had these instructions in writing for use during their deliberations.

The prosecutor began his closing argument:

> "Ladies and gentlemen, welcome back. Thank you for coming and for sticking with us for this trial. Ladies and gentlemen, now is the time the case will be turned over to you to decide the truth of the matter in this case.

> "Ladies and gentlemen, the presumption of innocence no longer applies. Evidence has been admitted. Evidence that proves the defendant guilty beyond a reasonable doubt."

Casimiro's trial counsel did not object.

Later, while discussing how to fill out the verdict forms, the prosecutor told the jury that it would fill out the guilty form "if and when you find the People have proven the case beyond a reasonable doubt[.]" The prosecutor also asserted that F.'s testimony had proven Casimiro's guilt on all counts beyond a reasonable doubt, and finished his rebuttal argument by stating "the People have proven this case beyond a reasonable doubt."

### B.     Discussion

" 'The applicable federal and state standards regarding prosecutorial misconduct are well established. " 'A prosecutor's … intemperate behavior violates the federal Constitution when it comprises a pattern of conduct "so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process." ' " [Citations.]

5.

Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves " ' "the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury." ' " ' " (*People v. Hill* (1998) 17 Cal.4th 800, 819.)  Where, as here, the "charge of prosecutorial misconduct is based on a prosecutor's argument to the jury, the appellate court must consider whether there is a reasonable likelihood the jury construed or applied any of the challenged statements in an objectionable manner.  [Citation.]  The court must consider the challenged statements in the context of the argument as a whole to make its determination."  (*People v. Cowan* (2017) 8 Cal.App.5th 1152, 1159 (*Cowan*).)

"A defendant in a criminal action is presumed to be innocent until the contrary is proved[.]"  (§ 1096.)  In *People v. Goldberg* (1984) 161 Cal.App.3d 170 (*Goldberg*), the Second District Court of Appeal relied on section 1096 to approve of these remarks by the prosecutor:  " 'And before this trial started, you were told there is a presumption of innocence, and that is true, but once the evidence is complete, once you've heard this case, once the case has been proven to you—and that's the stage we're at now—the case has been proved to you beyond any reasonable doubt.  I mean, it's overwhelming.  There is no more presumption of innocence.  Defendant Goldberg has been proven guilty by the evidence.' "  (*Goldberg.* at p. 189, italics omitted.)  The court noted the jury had been properly instructed on the presumption of innocence and determined that "the prosecutor essentially restated, albeit in a rhetorical manner, the law as reflected in … section 1096[.]"  (*Ibid.*)  Thus, the court concluded that the prosecutor's remarks had "effectively preserv[ed] the presumption up and until unanimous agreement [was] reached," which occurred at "the close of evidence in a persuasively prosecuted case."  (*Id.* at pp. 189—190.)

The California Supreme Court addressed similar remarks in *People v. Booker* (2011) 51 Cal.4th 141 (*Booker*).  There, the prosecutor had argued, " 'I had the burden of proof when this trial started to prove the defendant guilty beyond a reasonable doubt, and

6.

that is still my burden…. [¶] The defendant was presumed innocent until the contrary was shown. That presumption should have left many days ago. He doesn't stay presumed innocent.' " (*Id.* at p. 183.) After the defendant objected, the trial court instructed the jury that the presumption of innocence persisted unless and until the jury concluded the defendant was guilty. (*Id.* at pp. 183—184.) The prosecutor then continued, " 'As the Court instructed you, I was correct, that the defendant starts out with the presumption of innocence. That doesn't stay. That isn't an automatic thing forever. That's why we have a trial. Once the evidence convinces you he is no longer innocent, the presumption vanishes. That's all it is.' " (*Id.* at p. 184.) The Supreme Court expressly approved *Goldberg*'s reasoning and held the prosecutor's remarks were proper because they merely encouraged the jury to "return a verdict in his favor based on the state of the evidence presented." (*Id.* at p. 185.)

The prosecutor's remarks here were essentially the same as those approved in *Goldberg* and *Booker*. His remark that the presumption of innocence "no longer applie[d]," considered in context, was a permissible statement about the strength of the evidence. The remark essentially conveyed that the presumption of innocence no longer applied because the evidence proved Casimiro guilty beyond a reasonable doubt. That the court correctly instructed the jury on the presumption of innocence supports this interpretation of the prosecutor's remarks. We disagree with Casimiro that the prosecutor was arguing that the presumption of innocence no longer applied as a procedural matter. We thus conclude the prosecutor's argument here was not an incorrect statement of the law and, instead, was a permissible argument about the weight of the evidence of guilt.

Casimiro unpersuasively relies on *People v. Dowdell* (2014) 227 Cal.App.4th 1388 (*Dowdell*), where the Sixth District Court of Appeal concluded the prosecutor committed misconduct by stating that " '[t]he presumption of innocence is over.' " (*Id.* at p. 1407, italics omitted.) The prosecutor first used this phrase while discussing the state of the evidence, which the appellate court determined was analogous to the remarks

7.

approved in *Goldberg*. (*Dowdell,* at pp. 1407—1408.) However, the court held that the prosecutor had committed misconduct by using the phrase a second time when he said, " 'It's fairly obvious that [the defendant] committed all of the crimes we are accusing him of. The presumption of innocence is over. He has gotten his fair trial. Be thorough, deliberate, and come back with guilty verdicts on all counts.' " (*Ibid.*, italics omitted.) The prosecutor's remarks thus improperly "implied that the 'fair trial' was over" and that the jury should consequently no longer "respect the presumption of innocence." (*Id.* at p. 1408.)

*Dowdell* is distinguishable. That case essentially involved two statements—the first one proper, the second one improper. What made the second one improper was that it was tied not to a discussion of the evidence but to the idea that "the 'fair trial' was over." (*Dowdell, supra,* 227 Cal.App.4th at p. 1408.) In other words, the second statement improperly conveyed that the presumption of innocence no longer applied as a procedural matter. In contrast, Casimiro's prosecutor tethered his claim that the presumption of innocence no longer applied to the idea that the evidence had proven Casimiro guilty. His remarks were therefore more analogous to those approved in *Booker* and *Goldberg* than those found improper in *Dowdell*.

We are also not persuaded by Casimiro's reliance on *Cowan*, which held that the prosecutor committed misconduct by stating, "Let me tell you that presumption [of innocence] is over. Because that presumption is in place only when the charges are read. But you have now heard all the evidence. That presumption is gone.' " (*Cowan, supra,* 8 Cal.App.5th at p. 1154.) Although the *Cowan* prosecutor's remarks also referred to the state of the evidence, they are distinguishable from the ones here. The statement that the presumption of innocence was "in place only when the charges are read" impermissibly conveyed that the presumption no longer applied as a procedural matter once the trial began. Here, in contrast, the prosecutor did not suggest that the presumption had ended before the close of evidence and that the presumption was unrelated to the evidence.

8.

Finally, Casimiro's cites *U.S. v. Perlaza* (9th Cir. 2006) 439 F.3d 1149 (*Perlaza*). There, the prosecutor argued to the jury, " '[The presumption of innocence], when you go back in the room right behind you, is going to vanish when you start deliberating. And that's when the presumption of guilt is going to take over you….' " (*Id.* at p. 1169, italics omitted.) The Ninth Circuit ruled that the prosecutor's remark constituted misconduct, and that the trial court's curative instruction failed to correct its initial ratification of the prosecutor's argument when it stated in the presence of the jury, " 'That's proper rebuttal. Go ahead. You are all right.' " (*Id.* at p. 1171, fn. 25.) *Perlaza*, which is not binding on this court, is distinguishable as not only did that prosecutor make an incorrect statement of law—" 'presumption of guilt' "—but the error was compounded by the trial court's initial ratification of the misstatement—" '[y]ou are all right' "—and the Ninth Circuit ruled the curative instruction neither set forth the prosecutor's burden of persuasion, that is, proof beyond a reasonable doubt, nor clarified that the presumption of innocence " 'go[es] with the jury when it deliberates.' " (*Id.* at pp. 1171—1172 & fn. 25.) Nothing of that sort occurred here. Moreover, the prosecutor here emphasized that he bore the burden of proof beyond a reasonable doubt. As such, unlike the *Perlaza* jury, Casimiro's jury was not misled.

We find no prosecutorial misconduct or violation of Casimiro's due process rights.

**II.    S.B. 567**

Casimiro also contends the matter must be remanded for resentencing in light of a change to the statutory sentencing scheme enacted while his appeal was pending. Because his sentence included upper terms on two counts, he claims he is entitled to be resentenced under a recently enacted portion of section 1170 now governing trial courts' discretion when imposing one of three possible terms under the determinate sentencing law. We agree.

9.

### A.    Additional background

As discussed, the court sentenced Casimiro to the upper term on the forcible sexual penetration count (count 2) and the forcible lewd acts count (count 3).  The probation report, which the sentencing court needed to consider (§ 1203, subdivision (b)(3)), listed two factors in aggravation:  (1) Casimiro's "prior convictions as an adult are numerous and increasing in seriousness" (see Cal. Rules of Court,[2] rule 4.421(b)(2)), and (2) his "prior performance on probation was unsatisfactory, as he sustained violations of probation and committed new law violations while on probation" (see rule 4.421(b)(4) and (b)(5)).[3]  The report stated "[t]here are no cited factors in mitigation fully applicable."

The probation report also summarized Casimiro's prior record.  Casimiro had suffered five prior convictions according to the report, three misdemeanors and two felonies.  Two of the misdemeanors were for driving under the influence (Veh. Code, § 23152, subds. (a) & (b)) and the third was for theft (§ 484, subd. (a)).  One felony was for domestic violence (§ 273.5, subd. (a)) and the other was for being a felon in possession of a firearm (§ 29800, subd. (a)(1)).  For purposes of our discussion, based on the record before us, nothing regarding Casimiro's criminal history was presented to the trial court in the form of "certified record[s] of conviction."  (See § 1170, subd. (b)(3).)

At the sentencing hearing, the trial court agreed with the probation officer that Casimiro's five prior convictions were numerous and of increasing seriousness.  The court also found that Casimiro's prior performance on probation was unsatisfactory.  It further found Casimiro had unsuccessfully completed probation in two prior cases and

---

[2] Undesignated references to rules are to the California Rules of Court.

[3] Rule 4.421(b)(4) lists as an aggravating factor relating to the defendant:  "The defendant was on probation … when the crime was committed[.]"  Rule 4.421(b)(5) lists as an aggravating factor:  "The defendant's prior performance on probation … was unsatisfactory."

found that Casimiro was on probation when he committed the current crimes. It found Casimiro was remorseless and "would present a substantial danger to others" if released on probation.

In imposing the upper terms on counts 2 and 3, the court stated the aggravating factors "far outweigh" the mitigating factors. The court specified the following aggravating factors to support the decision: Casimiro had suffered numerous prior convictions (see rule 4.421); he was on probation when he committed the current offenses (see rule 4.421); his prior performance on probation was unsatisfactory (see rule 4.421); F. was a particularly vulnerable victim (see rule 4.421); the way the crime was committed indicated planning (see rule 4.421); he took advantage of a position of authority (see rule 4.421); and he has engaged in violent conduct indicating "that he presents a serious danger to the public" (see rule 4.421). The court restated it found no factors in mitigation.

### C. Analysis

In late 2021, S.B. 567 was signed into law, amending the determinate sentencing scheme in section 1170, subdivision (b). Before the bill's passage, section 1170, subdivision (b), permitted sentencing courts to impose determinate sentences comprised of either the lower, middle, or upper terms. Sentencing courts had broad discretion to impose any of the three terms and could make factual findings on aggravating or mitigating circumstances as described in California Rules of Court, rules 4.421 and 4.423.

On January 1, 2022, under the newly amended law, the middle term was made the presumptive maximum term of imprisonment. (§ 1170, subd. (b)(1).) Now, sentencing courts may only impose the upper term sentence where there are circumstances in aggravation that justify imposition of a term of imprisonment exceeding the middle term, and the facts underlying all of the aggravating circumstances have been stipulated to by the defendant or are found true beyond a reasonable doubt by a jury or a trial court.

11.

(§ 1170, subd. (b)(1), (2).) However, "the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).)

Without evidence to the contrary, amendments to statutes that reduce punishment for a particular crime apply to all defendants whose judgments are not yet final on the amendment's operative date. (*In re Estrada* (1965) 63 Cal.2d 740, 744—745.) S.B. 567 does not contain a provision intending only prospective application and so applies to all cases not yet final on January 1, 2022. (*People v. Dunn* (2022) 81 Cal.App.5th 394, 402, review granted Oct. 12, 2022, S275655 (*Dunn*); *People v. Lopez* (2022) 78 Cal.App.5th 459, 465.) The parties recognize, as do we, that the ameliorative benefits of S.B. 567 apply retroactively to Casimiro's non-final case.

The parties disagree, however, on the appropriate remedy. Defendant argues the case must be remanded so that the trial court may exercise its discretion under amended section 1170, subdivision (b), and decide whether to impose the middle or upper terms on the two counts at issue. The People argue any error was harmless under the standard articulated by a panel of this court in *Dunn, supra,* 81 Cal.App.5th 394.

Our colleagues in *Dunn* articulated the appropriate harmlessness test as follows: "The reviewing court determines (1)(a) beyond a reasonable doubt whether the jury would have found one aggravating circumstance true beyond a reasonable doubt and (1)(b) whether there is a reasonable probability that the jury would have found any remaining aggravating circumstance(s) true beyond a reasonable doubt. If all aggravating circumstances relied upon by the trial court would have been proved to the respective standards, any error was harmless. If not, the reviewing court [must determine] (2) whether there is a reasonable probability that the trial court would have imposed a sentence other than the upper term in light of the aggravating circumstances provable from the record as determined in the prior steps. If the answer is no, the error was harmless. If the answer is yes, the reviewing court vacates the sentence and remands for

12.

resentencing consistent with section 1170, subdivision (b)." (*Dunn, supra,* at pp. 409—410, fn. omitted.)

Casimiro argues that his sentences on counts 2 and 3 are inconsistent with section 1170, subdivision (b)(2) and (b)(3), because none of the aggravating circumstances relied upon by the sentencing court were either found true beyond a reasonable doubt or admitted by Casimiro. He thus contends the upper terms on counts 2 and 3 were imposed in error. The People concede that not all of the aggravating circumstances are consistent with the amended statute but maintain that one of the aggravating circumstances was admitted by Casimiro's trial counsel in a sentencing memorandum.[4] The People also maintain that, in any event, any noncompliance with section 1170, subdivision (b), was harmless under the test articulated in *Dunn, supra,* 81 Cal.App.5th 394.

We agree that a two-step analysis is necessary. However, even assuming we agree with *Dunn*'s articulation of step 1(a), we disagree with *Dunn*'s application of the *Watson*[5] harmless error analysis, particularly at the second step. At the first step, a harmless error analysis cannot establish resentencing is unwarranted—a second step is required.

---

[4] The People contend the probation report proves that Casimiro's prior convictions are numerous and of increasing seriousness, that he failed on probation, and that he was on probation when he committed the present offenses. This presumes that a probation report is a certified record of conviction, but it is not. (*Dunn, supra,* 81 Cal.App.5th at p. 403.)

Also, Casimiro's counsel filed a sentencing memorandum in which he recounted Casimiro's criminal history and prior probation performance. Counsel listed Casimiro's five prior convictions and disputed that they were "numerous" and "increasing in seriousness." The People contend this is an admission of Casimiro's five prior convictions. (See § 1170, subd. (b)(2).) Casimiro responds the memorandum, which was submitted before S.B. 567's enactment, was not intended to serve as a stipulation to any aggravating factors, and thus it would be unfair to use it for the present purpose of complying with section 1170, subdivision (b)(2). As we will explain, we need not settle this dispute.

[5] *People v. Watson* (1956) 46 Cal.2d 818.

Moreover, at the second step, if the reviewing court finds that some, but not all, of the aggravating circumstances relied on by the trial court have been proved to the standards in the first steps, the question at the second step is not "whether there is a reasonable probability that the trial court would have imposed a sentence other than the upper term in light of the aggravating circumstances[.]" Instead, as explained in *People v. Lewis* (2023) 88 Cal.App.5th 1125 (*Lewis*), the question at the second step is "whether the record *clearly indicates* that the trial court would have imposed the same sentence under the new law." (*Id.* at p. 1138, citing *People v. Gutierrez* (2014) 58 Cal.4th 1354.)

We need not determine here whether any of the aggravating circumstances complied with amended section 1170, subdivisions (b)(2) and (b)(3) or were proven to the standards of the first steps of *Dunn*'s harmlessness test. This is because even if all of the aggravating circumstances were proven, nothing in the record "clearly indicates" the trial court would still have imposed two upper terms had section 1170, subdivision (b)(1)—imposing the presumptive midterm—been in effect when Casimiro was sentenced. (*Lewis, supra,* 88 Cal.App.5th at p. 1134.) The trial court's remark that the aggravating factors "far outweigh[ed]" the mitigating factors is not a clear indication in the circumstances here that the trial court would reimpose the two upper terms given the new presumptive midterm.

Because the changes made to section 1170 retroactively apply, on remand the trial court must incorporate them when it resentences Casimiro and must make any requisite findings accordingly. Furthermore, "[w]e conclude the need to apply amended section[]1170, subdivision (b) ... creates sufficiently ' "changed circumstances" ' [citation] to warrant a full resentencing." (*People v. Jones* (2022) 79 Cal.App.5th 37, 46.) On remand, therefore, the trial court may fully resentence defendant anew when it incorporates the new legislative changes. (See *People v. Valenzuela* (2019) 7 Cal.5th 415, 424—425 ["[T]he full resentencing rule allows a court to revisit all prior sentencing

14.

decisions when resentencing a defendant."]; accord *People v. Buycks* (2018) 5 Cal.5th 857, 893 [" 'the full resentencing rule' "].)

## DISPOSITION

The matter is remanded for a full resentencing in a manner consistent with this opinion.  Should the sentence change, the superior court clerk is directed to prepare an amended abstract of judgment and forward certified copies to the appropriate entities.

In all other respects, the judgment is affirmed.


SNAUFFER, J.

I CONCUR:


MEEHAN, J.

15.

DETJEN, Acting P. J., Concurring.

I concur with the majority opinion in rejecting defendant Raymundo Lopez Casimiro's claim of prosecutorial misconduct. I also agree with the majority opinion's disposition in that I conclude defendant's sentence must be vacated and the matter remanded for resentencing consistent with the requirements of Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill No. 567).

I write separately, however, to explain that I concur in the conclusion on the Senate Bill No. 567 issue by applying the standard of harmless error articulated in *People v. Dunn* (2022) 81 Cal.App.5th 394, 401, review granted October 12, 2022, S275655.[1] My disagreement with the majority stems from my view that Senate Bill No. 567, in modifying Penal Code[2] section 1170, subdivision (b)(1) through (5), did not change how the trial court exercises its discretion to select a term of imprisonment, nor did it change the factors that the court considers in exercising its discretion; it simply codified and made explicit the longstanding standard for appropriate exercise of discretion in selecting a term of imprisonment when a statute specifies three possible terms.

The *Gutierrez* instruction (*People v. Gutierrez* (2014) 58 Cal.4th 1354 (*Gutierrez*))—which requires "remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion' "—applies where a trial court makes a sentencing decision without "awareness of the full scope of discretion" that it has, or for instance, where the standard for exercise of discretion has changed while the matter is on direct appeal. (*Gutierrez*, at p. 1391; see *In re T.A.* (2023) 90 Cal.App.5th 347, 354; *Lewis*, *supra*, 88 Cal.App.5th at p. 1143 (conc. opn. of Raphael, J.); *People v. McDaniels* (2018)

---

[1] My reasons for disagreement largely mirror those stated by Justice Michael J. Raphael in his concurring opinion in *People v. Lewis* (2023) 88 Cal.App.5th 1125 (*Lewis*).

[2] Undesignated statutory references are to the Penal Code.

22 Cal.App.5th 420, 425–426.)  It is necessary in such situations to ensure that harmless error review does not become a speculative guessing game of how the trial court would have exercised its discretion in the first instance had it understood the scope of its discretion.  (*McDaniels*, at p. 426.)

Senate Bill No. 567, as to subdivision (b)(1) through (5) of section 1170, did not, however, change the standard for the exercise of discretion.  Before and after Senate Bill No. 567, the trial court could – and can now – impose the upper term when it determines "there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term . . . ."[3, 4]  (§ 1170, subd. (b)(2).)  That determination is the same determination that the trial court necessarily made in imposing the upper term prior to Senate Bill No. 567 and requires consideration of the same circumstances in aggravation and in mitigation.  Before and after the modifications to the determinate sentencing law brought about by *Cunningham v. California* (2007) 549 U.S. 270, and after the effective date of Senate Bill No. 567, trial courts have been required to consider and state the circumstances in aggravation and in mitigation in exercising discretion to select a term of imprisonment.  (§ 1170, subd. (b)(5); *id*., former subd. (c);

---

[3] Section 1170, subdivision (b)(2) and (3) also requires that the facts underlying those circumstances "have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial" or be "the defendant's prior convictions . . . [having been proved using] a certified record of conviction."  Steps 1(a) and 1(b) of the *Dunn* harmless error analysis address that requirement.

[4] The language of section 1170, subdivision (b)(2) does not suggest that a presumption in favor of the middle term continues to apply after the trial court considers the circumstances in aggravation and determines that a sentence in excess of the middle term is justified.  (§ 1170, subd. (b)(2) ["[t]he court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term . . . ."]; accord, Cal. Rules of Court, rule 4.420(b).)  Once that determination is made, section 1170, subdivision (b)(1) and (2) impose no limits upon the trial court's discretion in selecting an appropriate term of imprisonment.

Cal. Rules of Court, rule 4.420(b), (i);**5** former rule 4.420(b), (e).)  At all of those times, the standard for abuse of discretion in selecting a term of imprisonment has remained the same:  At least "[a] single aggravating factor [has always been required to] support an upper term sentence."  (*People v. Weber* (2013) 217 Cal.App.4th 1041, 1064, citing *People v. Osband* (1996) 13 Cal.4th 622, 728, 732; accord, *People v. Flowers* (2022) 81 Cal.App.5th 680, 684, review granted Oct. 12, 2022, S276237; *People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1371.)  The trial court may base its decision on any aggravating circumstances**6** it deems significant that is " 'reasonably related to the decision being made.' "  (*People v. Sandoval* (2007) 41 Cal.4th 825, 848.)  But, a trial court "abuse[s] its discretion . . . if it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision."  (*Id.* at p. 847.)

Prior to the effective date of Senate Bill No. 567, had a trial court imposed an upper-term sentence without reliance on any circumstances in aggravation, it would have constituted an abuse of discretion.  (*People v. Weber*, *supra*, 217 Cal.App.4th at p. 1064.)  Indeed, courts had to state on the record "[t]he reasons for selecting one of the three authorized terms of imprisonment referred to in [former] section 1170[, subdivision ](b)."  (Former rule 4.420(e).)  Such statements of reasons indicated that the trial court found the circumstances in aggravation justified an upper-term sentence.  By prohibiting a trial court from imposing the upper term unless the circumstances in aggravation justified imposition of the upper term, Senate Bill No. 567 codified the long-standing standard for

---

**5** Undesignated references to rules are to the California Rules of Court.

**6** As noted previously, the amendments to section 1170, subdivision (b)(2) and (3), now require that the trial court rely only on factors for which the underlying facts were stipulated by the defendant, proved to the jury beyond a reasonable doubt, or were the defendant's prior convictions which have been proved by a certified record of conviction. That change in factfinder and standard of proof does not change the standard for the trial court's exercise of discretion where the aggravating circumstances have been proved as required.

proper exercise of trifecta sentencing discretion.  Because the standard has merely been codified, not changed, a reviewing court does not engage in the kind of speculative review warned against by *Gutierrez* and the clear indication standard need not be applied.

Because the trial court in this case has exercised its discretion to impose the upper term based on the implied conclusion that the aggravating circumstances it found true justified imposition of the upper term, as the reviewing court, we should consider whether there is a reasonable probability that the trial court would have reached a different sentence had it not considered any aggravating circumstances not provable to the relevant standards.**7**

As the majority notes, in imposing the upper term on counts 2 and 3, the trial court relied upon several objective circumstances in aggravation not found true by the jury— defendant had suffered numerous prior convictions (rule 4.421(b)(2)), he was on probation at the time of the offense (rule 4.421(b)(4)), and his performance on probation was unsatisfactory (rule 4.421(b)(5)).  The probation report reflects that the probation officer compiled the list of defendant's five prior convictions in reliance on the California Identification and Investigation Bureau database, the Federal Bureau of Investigation database, the California Department of Motor Vehicles database, and the Madera County Department of Corrections database.**8**  In his sentencing memorandum, defendant acknowledged having suffered those five prior convictions.  Defendant did not dispute the truth of those convictions; he disputed only whether they were " 'numerous and

---

**7** For the same reason, if an appellate court concludes that all aggravating circumstances found true by the trial court were provable to the jury to the relevant standards, there is no need to move to the second step of *Dunn* because the trial court has already exercised its discretion to determine that the upper term was justified by the aggravating circumstances.

**8** Specifically, the probation officer identified the sources of the information and defendant's identification numbers within those databases as follows:
"CII:  A23544488[, ¶] FBI:  482789WC5[, ¶] CDL:  Y9155969[, ¶ and] MDOC:  167326."

4.

increasing in seriousness.' " I conclude beyond a reasonable doubt that the jury would find true beyond a reasonable doubt that defendant had suffered those convictions. Defendant's convictions are numerous. (See *People v. Searle* (1989) 213 Cal.App.3d 1091, 1098 [three prior convictions are numerous].) Defendant also acknowledged in his sentencing memorandum his probation revocations and that he was on probation on the date of the offenses. I note both of defendant's probation revocations that did not include reinstatement occurred on the same date as his sentencing for a new offense, suggesting that his revocations were based on the commission of a new offense for which he was convicted. I therefore conclude there is no reasonable probability the jury would not have found true beyond a reasonable doubt that defendant's performance on probation was unsatisfactory and that defendant was on probation on the date of the offenses.

The trial court also, however, relied upon subjective aggravating circumstances including: the minor victim was "particularly vulnerable" (see rule 4.421(a)(3)), the "manner in which the crime was committed indicated planning" (see rule 4.421(a)(8)), defendant "took advantage of a position of authority" (see rule 4.421(a)(11) ["defendant took advantage of a position of trust or confidence"]), and defendant's "violent conduct indicate[d] that he presents a serious danger to the public" (see rule 4.421(b)(1)).**9** Those circumstances all "rest[] on . . . somewhat vague or subjective standard[s], [such that it is] difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court." (*People v. Sandoval* (2007) 41 Cal.4th 825, 840; see *ibid.* [such circumstances "often entail a subjective assessment of the circumstances rather than a

---

**9** While the trial court listed those circumstances in aggravation after noting that it would impose the sentences consecutively rather than concurrently, the circumstances identified were those listed in rule 4.421—listing circumstances in aggravation—and not those factors listed in rule 4.425—listing factors affecting concurrent or consecutive sentences.

straightforward finding of facts"].)  So, there is *a* reasonable probability the jury would not have found these aggravating factors true beyond a reasonable doubt.

Moving next to step 2 of the *Dunn* harmless error analysis, because I conclude there is *a* reasonable probability the jury would not have found true four of the seven aggravating circumstances and because the trial court gave no particular weight to any aggravating circumstance, I conclude there is *a* reasonable probability the trial court would have imposed a sentence less than the upper term had it not relied upon all of the circumstances it considered.  For that reason, I concur in the majority's disposition.


DETJEN, Acting P. J.

6.