Filed 10/24/25  P. v. Valenzuela CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B340254 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. XSCMA036245) |
| v. | |
| RICARDO VALENZUELA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kathleen Blanchard, Judge.  Affirmed.

Randy S. Kravis, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Ricardo Valenzuela appeals from the denial of his resentencing petition under Penal Code[1] section 1172.6, formerly section 1170.95. Defendant argues substantial evidence does not support the trial court's conclusion that he directly aided and abetted murder and attempted murder. We disagree and affirm.

## FACTUAL BACKGROUND

Because defendant challenges the sufficiency of the evidence, we summarize that evidence in the light most favorable to the judgment. (See *People v. Reyes* (2023) 14 Cal.5th 981, 988.)

Defendant was a member of Trust No Bitch (TNB), a criminal street gang. TNB was rivals with Young Boys Rifa (YBR), another gang.

### 1. *May 6, 2006 incident*

On May 6, 2006, Oscar Flores was pulling out of a gas station in a white Nissan Sentra. In the car with him were YBR member Ezekiel Gonzalez and a person known as "Socko." Flores denied being a gang member himself.

Flores saw defendant driving alone in a white Ford Festiva.[2] Defendant said, "TNB," and began shooting at Flores's car. Flores drove away. The shooting shattered three windows in Flores's car and left multiple bullet holes.

---

[1] Unspecified statutory citations are to the Penal Code.

[2] Persons in the record at times refer to the white Ford as a "Fiesta" as opposed to a "Festiva." Flores identified it as a Festiva.

Flores testified he had never seen defendant before, but Gonzalez told Flores defendant was from TNB and was called "Snaps."

## 2.    *July 10, 2006 incident*

On July 10, 2006, Flores was driving in the Nissan Sentra with Gonzalez and a man he called "Smokes." Flores saw the Ford Festiva from the May incident driving on the street. At Gonzalez's prompting, Flores followed the Festiva.

Defendant was driving the Festiva with Jose Barra as his passenger. He saw the Nissan Sentra, which began following him. Defendant used his cell phone to call fellow TNB member Roger Martinez. Defendant told Martinez he was being chased, and asked Martinez to "get a strap," meaning a gun. He called back later and told Martinez his location.

Sometime thereafter, as Flores was following defendant, a car pulled up next to the driver's side of the Sentra; the car was driving on the wrong side of the road. The driver rolled down the window and began firing at Flores's car. Flores identified the driver as Martinez.

As Martinez continued to fire, Gonzalez fired back at Martinez. Flores looked to his right and saw the Festiva was now on the passenger side of his car, with defendant driving. Flores saw muzzle flashes coming from the Festiva. During the gun battle, a bullet hit Flores's left arm, and Gonzalez was killed. The evidence suggested the bullet that killed Gonzalez came from Martinez's car.

Defendant testified at trial. He acknowledged he called Martinez and told him defendant was being "chased" and Martinez should "get a strap." Defendant denied he told

3

Martinez to shoot or kill anyone—his hope was that Martinez "could help me get away from them or distract them . . . ."

## PROCEDURAL HISTORY

### 1. Conviction and sentencing

For the May 6 incident, the People charged defendant with three counts of attempted willful, deliberate, and premeditated murder. The People alleged as to each count that defendant personally and intentionally discharged a handgun, and personally used a handgun.

For the July 10 incident, the People charged defendant with the willful, deliberate, and premeditated murder of Gonzalez, two counts of attempted willful, deliberate, and premeditated murder, and three counts of shooting at an occupied vehicle. For the murder and attempted murder counts, the People alleged a principal personally used a handgun, personally and intentionally discharged a handgun, and personally and intentionally discharged a handgun causing great bodily injury and death. For the counts of shooting at an occupied vehicle, the People alleged defendant personally used a firearm.

As to all nine counts, the People alleged defendant committed the offenses for the benefit of, at the direction of, and in association with a criminal street gang.

Defendant was tried in 2010. The trial court instructed the jury on direct aiding and abetting and, as to the July 10 murder and attempted murder counts, the natural and probable consequences doctrine. The jury found defendant not guilty of first degree murder, but guilty of the lesser included offense of second degree murder. The jury otherwise found him guilty as

4

charged with all allegations found true. The trial court sentenced defendant to 230 years to life in state prison. The court imposed 15-year minimum parole eligibility terms on each of the four attempted murder counts under section 186.22, subdivision (b)(5).

On appeal, we modified the sentence to stay imposition of the 15-year minimum parole eligibility terms on the two attempted murders committed in July 2006, but otherwise affirmed the judgment.[3] (*People v. Valenzuela* (2011) 199 Cal.App.4th 1214, 1239 (*Valenzuela*).)

## 2. Resentencing petition

On February 19, 2019, defendant filed a petition under former section 1170.95 seeking resentencing. The petition was assigned to Judge Kathleen Blanchard, who had presided over defendant's trial and imposed his sentence.

The trial court appointed counsel for defendant. The People conceded defendant had made a prima facie showing for relief, and the court issued an order to show cause and set the matter for an evidentiary hearing. In advance of the hearing, defendant filed a brief limiting his request for resentencing to the murder and two attempted murder counts arising from the July 10 incident and argued defendant was convicted of those counts under the natural and probable consequences theory.

---

[3] Defendant's gang affiliation was used to impose both the 15-year minimum parole eligibility term and the firearm enhancements on the July 2006 attempted murders. This was impermissible under section 12022.53, subdivision (e)(2). (*Valenzuela, supra*, 199 Cal.App.4th at p. 1238.)

At the hearing, the court took judicial notice of the court's file and record of conviction. The parties submitted no further evidence.

The trial court denied the resentencing petition. The court explained, "[E]ven under the light of the evidence as most favorable to [defendant]," the evidence showed "that he called [Martinez], told him to get a strap, told him he was being followed, called him back with his location, and set in motion all of the shooting, the car-to-car shooting, as a direct aider and abettor. I understand the People . . . give the alternate theory . . . that he could have been the actual perpetrator of the shooting, but I think that there was overwhelming evidence that at the very least he was guilty as a direct aider and abettor to the attempt[ed] murder and the murder at issue."

Defendant appealed.

## DISCUSSION

### A.  Governing Law and Standard of Review

"Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) (Stats. 2018, ch. 1015) amended sections 188 and 189 of the Penal Code to 'eliminate[ ] natural and probable consequences liability for murder as it applies to aiding and abetting, and [to] limit[ ] the scope of the felony-murder rule.' [Citation.]" (*People v. Lee* (2023) 95 Cal.App.5th 1164, 1173.) Amended section 188 provides that except as stated in the amended section 189 governing felony murder, " 'in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime.' " (*Lee*, at p. 1173, quoting § 188, subd. (a)(3).)

6

The bill also added former section 1170.95, now numbered section 1172.6, "which creates a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 957.) Relief is potentially available for "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter . . . ." (§ 1172.6, subd. (a).)

If a petitioner makes a prima facie showing of relief under section 1172.6, the trial court must issue an order to show cause and hold an evidentiary hearing. (§ 1172.6, subd. (c); *People v. Hurtado* (2023) 89 Cal.App.5th 887, 891.) At that hearing, the People must prove beyond a reasonable doubt that the petitioner remains guilty of murder or attempted murder under the amended sections 188 and 189. (§ 1172.6, subd. (d)(3).)

"[A] trial court's decision denying a petition under section 1172.6 following an evidentiary hearing is predominantly a question of fact" that is reviewed for "substantial evidence." (See *People v. Underwood* (2024) 99 Cal.App.5th 303, 314.) "Under this standard, we review the record ' " 'in the light most favorable to the [order or] judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " ' [Citation.]" (See *People v. Reyes* (2023) 14 Cal.5th 981, 988.) " 'If such substantial evidence be found, it is of no consequence that the trial court believing other evidence, or

drawing other reasonable inferences, might have reached a contrary conclusion.' [Citation.]" (*People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1363, italics omitted.)

## B. Substantial Evidence Supports the Trial Court's Ruling

We note defendant's briefing below and on appeal limits his resentencing request to the murder and attempted murder counts arising from the July 10 incident. He does not seek resentencing of the attempted murder counts arising from the May 6 incident.

We further note although Flores's testimony that he saw muzzle flashes from defendant's car arguably supports a direct perpetrator theory, the trial court apparently eschewed such a theory, instead concluding the evidence showed defendant was guilty as an aider and abettor. Accordingly, our analysis disregards the evidence that defendant fired at Flores's vehicle during the July 10 incident.

Substantial evidence would still support the trial court's findings. In May 2006, defendant attempted to kill the occupants of Flores's Nissan Sentra. Two months later, defendant saw that same Sentra following him. He called Martinez and told Martinez to get a "strap," i.e., arm himself, then called again to tell Martinez defendant's (and, by extension, the Sentra's) location. Martinez caught up to them and opened fire. It is a reasonable inference that defendant, who demonstrated lethal intent towards the occupants of the Sentra in May, asked Martinez to arm himself with the intention that Martinez shoot at the Sentra's occupants just as defendant had in May.

Defendant argues that even if the evidence establishes he set the chain of events in motion that led to the shooting, "it still does not mean that [defendant] intended to kill." Defendant

8

notes it was Flores and Gonzalez that instigated the encounter by "chas[ing]" defendant. Defendant argues, "There was no evidence that [defendant] said anything to Martinez about shooting to kill" or "to fire directly at the car." Thus, "it would be nothing but speculation to conclude that [defendant] made the call to Martinez with the specific intention of having Flores and the other occupants in his car killed as opposed to just distracting them long enough for him to get away, which was what he testified was his intention."

Defendant's argument might be more compelling if not for the May 2006 incident, in which, again, defendant demonstrated lethal intent towards the Sentra's occupants. Although this does not in itself establish he harbored the same intent in July 2006, it supports the other evidence establishing that intent, namely his calling his fellow gang member and instructing him to obtain a firearm. From this the trial court could infer defendant intended Martinez to deal with the Sentra the way defendant had before, with lethal force.

## DISPOSITION

The order is affirmed.
NOT TO BE PUBLISHED.


BENDIX, Acting P. J.

We concur:




WEINGART, J.                    M. KIM, J.


9